JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| **I. (a) PLAINTIFFS** | **DEFENDANTS** |
|---|---|
| Ruth F. Himes, Executor for the Estate of Carl L. Reeser and Marian L. Reeser, h/w. | Viad Corp, et al. |

**(b)** County of Residence of First Listed Plaintiff    Morgan County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Maricopa County
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Jason Yampolsky, Esquire
Maune Raichle Hartley French & Mudd, LLC
230 S. Broad Street, Suite 1010, Philadelphia PA 19102 800-358-5922

Attorneys *(If Known)*
Kevin J. O'Brien, Esquire
Marks, O'Neill, O'Brien, Doherty & Kelly, P.C.
1617 JFK Blvd., Suite 1010, Philadelphia, PA 19103

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question (U.S. Government Not a Party)
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | **PERSONAL INJURY** | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | ☒ 368 Asbestos Personal Injury Product Liability | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 891 Agricultural Acts |
| | | | | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | **IMMIGRATION** | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | |
| | | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | |
| | | ☐ 555 Prison Condition | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☐ 1 Original Proceeding
- ☒ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
28 U.S.C. § 1442(a)(1)
Brief description of cause:
Federal Officer Removal

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE
01/29/2020

SIGNATURE OF ATTORNEY OF RECORD
Kevin J. O'Brien/KJO4408

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____



# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _607 Christenson Road, Deer Lodge, TN 37726_

Address of Defendant: _1850 North Central Ave., Suite 1900, Phoenix, AZ 85004-4565_

Place of Accident, Incident or Transaction: _Philadelphia, PA_

---

**RELATED CASE, IF ANY:**

Case Number: **MDL 875**    Judge: **Robreno**    Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?    Yes ☐    No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?    Yes ☐    No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?    Yes ☐    No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?    Yes ☐    No ☑

I certify that, to my knowledge, the within case ☑ **is** / ☐ **is not** related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _01/29/2020_    _____ (signature) _____    _38393_
                                     *Attorney-at-Law / Pro Se Plaintiff*        *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.**    *Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☐ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☑ 11. All other Federal Question Cases
    *(Please specify):* _Asbestos - Federal Officer Removal_

**B.**    *Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
    *(Please specify):* _____

---

### ARBITRATION CERTIFICATION
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _Kevin J. O'Brien_ , counsel of record or pro se plaintiff, do hereby certify:

    **JAN 29 2020**

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: _01/29/2020_    _____ (signature) _____    _38393_
                                       *Attorney-at-Law / Pro Se Plaintiff*        *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)



UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____607 Christenson Road, Deer Lodge, TN 37726_____

Address of Defendant: _____1850 North Central Ave., Suite 1900, Phoenix, AZ 85004-4565_____

Place of Accident, Incident or Transaction: _____Philadelphia, PA_____

---

*RELATED CASE, IF ANY:*

Case Number: **MDL 875**    Judge: **Robreno**    Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?    Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?    Yes ☐   No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?    Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?    Yes ☐   No ☑

I certify that, to my knowledge, the within case ☑ is / ☐ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 01/29/2020 _____ _____ 38393
   *Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

---

CIVIL: (Place a √ in one category only)

A.   *Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☐ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☑ 11. All other Federal Question Cases
   *(Please specify):* Asbestos - Federal Officer Removal

B.   *Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
   *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, Kevin J. O'Brien _____, counsel of record or pro se plaintiff, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

JAN 29 2020

DATE: 01/29/2020 _____ _____ 38393
   *Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

*ER*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

RUTH F. HIMES, Executor for the Estate of CARL L.
REESER, deceased, and MARIAN L. REESER, his wife :

                                     v.                 :

A. DUIE PYLE, INC., et al.                :

CIVIL ACTION

NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.        ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.      ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.                     (✔)

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)      ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.  ( )

| January 29, 2020 | Kevin J. O'Brien | Viad Corp |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-564-6688 | 215-564-2526 | kobrien@moodklaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

JAN 29 2020

JAN 29 2020

(Civ. 660) 10/02



ER

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RUTH F. HIMES, Executor for the Estate of CARL
L. REESER, Deceased, and MARIAN L. REESER,
his wife,

       Plaintiffs,

   vs.

A. DUIE PYLE, INC.;
A.O. SMITH CORPORATION;
ABB, INC., as Successor-In-Interest To ITE Electrical
Products Co.;
AIR & LIQUID SYSTEMS CORPORATION,
Successor-By-Merger To BUFFALO PUMPS, INC.;
AMETEK, INC., Individually and As Successor-In-
Interest to Schutte & Koerting Company;
ARMSTRONG INTERNATIONAL, INC.;
ARVINMERITOR, INC.;
AURORA PUMP COMPANY;
AUTOCAR, LLC;
BASF CATALYSTS, LLC;
BAYER CORPORATION;
BOEING COMPANY, THE, Individually and as to its
Vertical Lift Division;
BOILER SUPPLY COMPANY, INCORPORATED;
BORGWARNER INC.;
BORGWARNER MORSE TEC LLC, as Successor-
By-Merger to BORG-WARNER CORPORATION;
BRIDGESTONE AMERICAS TIRE OPERATIONS,
LLC;
BRIGGS & STRATTON CORPORATION;
CARLISLE INDUSTRIAL BRAKE & FRICTION,
INC. f/k/a Motion Control Industries, Inc.;
CARRIER CORPORATION;
CBS CORPORATION, A Delaware Corporation f/k/a
Viacom, Inc., Successor-By-Merger to CBS
CORPORATION, A Pennsylvania Corporation f/k/a
WESTINGHOUSE ELECTRIC CORPORATION;
CLARIANT CORPORATION, Individually and as
Successor-In-Interest to Sud-Chemie, Inc. f/k/a
Southern Talc Company;
CLEAVER-BROOKS, INC. f/k/a CLEAVER-
BROOKS, A Division of Aqua-Chem, Inc.;
CRANE CO.;

No.:

**DEFENDANT VIAD CORP'S
NOTICE OF REMOVAL PURSUANT
TO 28 U.S.C. §1442 AND 1446**

CROSBY VALVE, LLC;
DAIMLER TRUCKS NORTH AMERICA, LLC;
DCO, LLC f/k/a DANA COMPANIES, Individually
and Successor-In-Interest to VICTOR GASKET
MANUFACTURING COMPANY and SPICER
PARTS;
DEERE & COMPANY;
EATON CORPORATION;
ELECTROLUX HOME PRODUCTS, INC., as
Successor-In-Interest to Copes-Vulcan;
ELLIOTT COMPANY f/k/a Elliot Turbomachinery
Company;
FIVES GIDDINGS & LEWIS, LLC, Individually and
as Successor-In-Interest to Kearney & Trecker
Corporation;
FLOWSERVE US, INC., Solely as Successor to
Edward Valve & Manufacturing Company;
FLOWSERVE US, INC., Successor-In-Interest to
Nordstrom Valve Company;
FLSMIDTH DORR-OLIVER INC. f/k/a
GL&V/DORR-OLIVER INC.;
FMC CORPORATION, Individually and as
Successor-In-Interest to Chicago Pump Company and
Northern Pump Company;
GARDNER DENVER, INC.;
GENERAL ELECTRIC COMPANY;
GOODRICH CORPORATION f/k/a The BF
Goodrich Company;
GOULDS PUMPS INCORPORATED;
GRINNELL, LLC;
GVW GROUP LLC, Individually and as Successor to
Autocar Company;
HARWICK STANDARD DISTRIBUTION
CORPORATION;
HENNESSY INDUSTRIES, LLC;
HONEYWELL INTERNATIONAL, INC.,
Individually and as Successor to AlliedSignal, Inc.,
The Bendix Corporation and Warner & Swasey
Company;
IMO INDUSTRIES, INC., Individually and as
Successor-In-Interest DeLaval Turbine Inc.;
INDUSTRIAL HOLDINGS CORPORATION f/k/a
The Carborundum Company;
INGERSOLL-RAND COMPANY;
INTERNATIONAL PAPER COMPANY;
ITT CORPORATION, Individually and as Successor-
In-Interest to Bell & Gossett Pump Company;

ITT CORPORATION, Individually and as Successor-In-Interest to Kennedy Valve Manufacturing Company;
ITT CORPORATION, Individually and as Successor-In-Interest to Hoffman Specialty Steam Traps;
KOHLER CO.;
LAWN-BOY INC.;
LEBLOND LTD.;
MACK TRUCKS, INC.;
MCNEIL (OHIO) CORPORATION, Individually and as Successor-In-Interest to McNeil Akron and McNeil Corporation;
MCNEIL & NRM, INC.;
METROPOLITAN LIFE INSURANCE COMPANY;
METSO MINERALS INDUSTRIES, INC., as Successor-In-Interest to Keeler Dorr-Oliver Boiler Company;
MONSANTO COMPANY;
NEWELL BRANDS INC., Individually and as Successor-In-Interest to Graco Children's Products, Inc.;
PNEUMO ABEX LLC, Individually and as Successor-By-Merger to Pneumo Abex Corporation, Successor-In-Interest to Abex Corporation, f/k/a American Brake Shoe Company, f/k/a American Brake Shoe and Foundry Company including the American Brakeblock Division, Successor-By-Merger to the American Brake Shoe and Foundry Company and The American Brakeblock Corporation, f/k/a The American Brake Materials Corporation;
SABIC INNOVATIVE PLASTICS LLC, Individually and as Successor-In-Interest to General Electric Plastics;
SAINT GOBAIN ABRASIVES INC., as Successor to Norton Company;
SCHRAMM, INC.;
SPIRAX SARCO, INC.;
SUPERIOR LIDGERWOOD MUNDY CORPORATION;
TACO PUMPS;
TMS INTERNATIONAL CORPORATION, Individually and as Successor to White Motor Company;
TMS INTERNATIONAL HOLDING CORPORATION, f/k/a Tube City IMS Corporation;
TRANE U.S. INC.;
VIAD CORP. f/k/a The Dial Corp. as successor-in-interest to Griscom-Russell Company;
VIKING PUMP, INC.;

VOLVO GROUP NORTH AMERICA, LLC,
Individually and as Successor to White Motor
Company and Autocar Company;
UNION CARBIDE CORPORATION;
WARREN PUMPS, LLC;
WEIR VALVE & CONTROLS USA, INC., as
Successor-In-Interest to Atwood & Morrill Valve
Company; and
YORK INTERNATIONAL CORPORATION, as
Successor-In-Interest to York Corporation.
                              Defendants.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

RUTH F. HIMES, Executor for the Estate of
CARL L. REESER, Deceased, and MARIAN L.
REESER, his wife,

No.:

                         Plaintiff,

**DEFENDANT VIAD CORP'S
NOTICE OF REMOVAL
PURSUANT TO 28 U.S.C. §1442
AND 1446**

vs.

A. DUIE PYLE, INC., et al.,

                      Defendants.

## NOTICE OF REMOVAL

Defendant, Viad Corp ("Viad") improperly pleaded as Viad Corp., f/k/a The Dial Corp. as successor-in-interest to Griscom-Russell Company, by and through its counsel, Marks, O'Neill, O'Brien, Doherty & Kelly, P.C., hereby removes this action to the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1441(b), 1442(a)(1), and 1446(a) and (b) and provides notice of same to counsel representing the plaintiff. In support of the removal, Viad avers as follows:

## BACKGROUND

1.      On or about December 20, 2019, Plaintiff filed this lawsuit in the Court of Common Pleas, Philadelphia County, Civil Division, December Term 2019, No. 3279, to recover money damages as a result of alleged personal injuries from exposure to asbestos. *A true and accurate copy of the Complaint and Notice to Plead is attached hereto as Viad's Exhibit A.*

2.      Viad was served with the Complaint on or about January 13, 2020. The service date was the first date on which Viad received a copy of the Complaint. Accordingly, pursuant to 28 U.S.C. § 1446(b), this Notice of Removal is timely filed within 30 days of when Viad

{PH503890.1}

received its first notice of facts indicating that, for the reasons set forth below, this action was removable under 28 U.S.C. § 1442(a)(1).

### FEDERAL OFFICER REMOVAL PURSUANT TO 28 U.S.C. § 1442(a)

3.      Viad is entitled to remove this action because:  (1) it is alleged to be a successor-in-interest to a person[1] that was acting under the direction and authority of a federal officer or agency; (2) it has a colorable federal defense to Plaintiff's claims; and (3) there is a causal nexus between Plaintiff's claims and Griscom-Russell's alleged conduct under federal authority. *Jefferson County, Alabama v. Acker,* 527 U.S. 423, 431 (1999); *Mesa v. California,* 489 U.S. 121, 131-34 (1989).

4.      Plaintiff erroneously alleges that Viad is the successor-in-interest to Griscom-Russell, which, upon information and belief, was a manufacturer and supplier of equipment to the United States Navy. **Viad disputes that it is, in fact or at law, the successor-in-interest to Griscom-Russell**. *See Declaration of Charles R. Cushing ("Cushing Declaration") attached as Exhibit B*; *see also Declaration of Retired Admiral Ben J. Lehman, attached as Exhibit C.* Viad did not succeed, and has never succeeded any alleged liabilities of Griscom-Russell Company.

5.      Any equipment manufactured and sold to the U.S. Navy was provided pursuant to procurement contracts entered into with the U.S. Navy and in accordance with reasonably precise and exacting specifications required by the U.S. Navy.  Griscom-Russell had no authority or discretion to deviate from the U.S. Navy's specifications. *See Ex. B, Cushing Declaration.*

6.      Griscom-Russell was acting under an officer or agency of the United States within the meaning of 28 U.S.C. § 1442(a)(1), and Plaintiff's claims against Viad in its alleged capacity

---

[1]Viad, a corporation, is a "person" within the meaning of 28 U.S.C. § 1442(a), as was Griscom-Russell. *See Aisup v. 3-Day Blinds, Inc.,* 435 F. Supp. 2d 838, 845 n.3 (S.D. Ill. 2006), citing *Camacho v. Autoridad de Telofonos de Puerto Rico,* 868 F.2d 482, 486-87 (1st Cir. 1989); *Green v. A.W. Chesterton Co.,* 366 F. Supp. 2d 1949, 1953 n.3 (D. Me. 2005).

as successor-in-interest to Griscom-Russell are derived solely from Griscom-Russell's official

duties.

    7.     Viad has a colorable claim to a federal defense in this action, specifically,

government contractor immunity from liability for injuries arising from exposure to asbestos in

equipment manufactured by Griscom-Russell. *Boyle v. United Techs. Corp.*, 489 U.S. 500, 512

(1988); *Reaser v. Allis Chambers Corp.*, CV 08-1296-SVW (SSx) (C.D. Cal. June 23, 2008), slip

op. at 9, 10, 11[2] ("In this action, based on the declaration of Admiral Lehman and Dr. Cushing, it

is possible to find that the Navy set forth reasonably precise specifications regarding the use of

warnings, such that Defendants have a basis for asserting a colorable federal defense." "Based

on the declarations by Admiral Lehman and Dr. Cushing, it can be inferred that any deviation

from the Navy's specifications would have resulted in rejection of the equipment." "Again, as

shown above by the declarations of Lehman, Cushing, and the exhibits thereto, the Navy had

direct control over all aspects of the equipment supplied to its ships.  It can therefore be inferred

that the reason why Defendants did not place warnings on their equipment was because such

warnings were precluded by the Navy's detailed specifications.").

    8.     Other cases reaching the same conclusions include *Marley v. Elliot*

*Turbomachinery Co., Inc.*, 545 F. Supp. 2d 1266 (S.D. Fla. 2008)  (removal allowed as affidavits

of Lehman and another "provide a good faith foundation to show (1) that the Navy controlled the

warnings to be affixed on parts manufactured by independent contractors, and (2) that the Navy

was likely to reject any asbestos warning given its policy to deal with the asbestos problem

exclusively through training"); *Oberstar v. CBS Corp.*, 2008 U.S. Dist. LEXIS 14023 (C.D. Cal.

Feb. 11, 2008) (plaintiff's motion to remand after Viad and General Electric removal denied

based, *inter alia,* on similar Lehman affidavit); *Harris v. Rapid Am. Corp.*, 532 F. Supp. 2d

---

[2] The entire slip opinion in the *Reaser* case is attached hereto as Exhibit "D".

1001, 1004-05 (N.D. Ill. 2007), *recon. denied*, 2008 WL 656266 (N.D. Ill. Mar. 7, 2008) (Lehman and Cushing affidavits held sufficient to demonstrate at removal stage that "(1) the Navy had complete control over the manufacture and design of every piece of equipment on its ships, as well as the nature of warnings issued; and (2) contractors, such as Griscom Russell, were not allowed to deviate from the specifications"); *Machnik v. Buffalo Pumps Inc.*, 506 F. Supp. 2d 99, 102 (D. Conn. 2007) (on similar affidavits of Lehman and another, Navy ship equipment manufacturers' federal officer removal allowed in asbestos personal injury claim involving state law failure to warn claims); *Nesbiet v. General Elec. Co.*, 399 F. Supp. 2d 205, 209-10 (S.D.N.Y. 2005) (Scheindlin, J.) (on similar affidavits of Lehman and another, federal officer removal by Navy ship turbine manufacturer held warranted in asbestos personal injury lawsuit). *Harris* at 1005 and *Machnik* at 103, as well as *Nesbiet* at 208, found that Admiral Lehman had "personal knowledge of the Navy's procurement practices regarding ship alterations and equipment overhauls" and "the contracts that existed between the Navy and its contractors" in the 1940s and 1950s. *See also Ballenger v. Agco Corp.*, 2007 WL 1813821 (N.D. Cal. June 22, 2007).

9.      Griscom-Russell acted under the authority and at the direction of the U.S. Navy with respect to the manufacture and sale of evaporators, fuel oil heaters, and associated equipment for the U.S. Navy.   The U.S. Navy enforced compliance with their design specifications.   No aspect of the design of its products escaped the close control of the U.S. Navy, which retained ultimate decision-making authority with respect to the design and approval of Griscom-Russell's products. *See Cushing Declaration attached as Exhibit B.  See also, e.g., Marley*, 545 F. Supp. 2d at 1272; *Harris*, 532 F. Supp. 2d at 1005; *Machnik*, 506 F. Supp. 2d at 103-05.

10.     The U.S. Navy specifications also covered the nature of any communication affixed to equipment supplied to the Navy.  Accordingly, Griscom-Russell was required to submit for approval and acceptance by the federal government drafts of any manuals, drawings or other written materials required to be provided with regard to equipment that it manufactured for the U.S. Navy.  Moreover, either directly or as a matter of practice, the U.S. Navy specified what was to be written, posted, printed and published on any nameplate or sign, including all aspects of warnings, for any product manufactured for its use.  Griscom-Russell would not have been permitted (either under the U.S. Navy specifications or as a matter of U.S. Navy practice) to attach any type of warning or cautionary statement not required or approved by the U.S. Navy, including any statement relating to asbestos, without prior discussion, approval and acceptance by the U.S. Navy.  *See Exhibits B & C*; *See also Emory v. McDonnell Douglas Corp.*, 148 F.3d 347, 350 (4th Cir. 1998) (holding that the federal contractor defense applies in the failure to warn context, and collecting cases so holding from the Second, Fifth, Sixth, Seventh and Ninth Circuits).

11.     The United States Navy was aware of the potential hazards of asbestos as early as 1922 and, by the 1940's, the Navy's knowledge regarding the potential hazards of asbestos was quite complete when compared to the available knowledge at the time.  *See Exhibit C; See also Miller v. Diamond Shamrock Co.,* 275 F.3d 414, 422-23 (5th Cir. 2001); *Harris*, 532 F. Supp. 2d at 1005-06; *Oberstar*, 2008 U.S. Dist. LEXIS at *9-14; *Machnik*, 506 F. Supp. 2d at 104.

12.     Removal is appropriate, *inter alia,* because Viad is not required to prove the merits of its defense in order to remove this case successfully.  Viad is only required to present a colorable claim such that the validity of the defense should be tried in federal rather than state court. *Jefferson County,* 527 U.S. at 431; *Willingham v. Morgan*, 395 U.S. 402, 406-07 (1969)

("In fact, one of the most important reasons for removal is to have the validity of the defense of official immunity tried in federal court. The officer need not win his case before he can have it removed."). The federal officer removal statute is not narrow or limited and should not be frustrated by a narrow interpretation of 28 U.S.C. § 1442(a)(1). *Willingham*, 395 U.S. at 406. *See also Reaser*, slip op. at 4 (defendants have no "'special burden' in showing that federal officer jurisdiction is proper"), and at 5, *citing Willingham* at 409 ("to qualify for removal, Defendants must be a person under the statute, raise a colorable federal defense, and present a basis for a causal connection between the charged conduct and the asserted government authority. . . . Defendants need not prove their federal defense or a causal nexus to justify removal.").

13.     Federal officer removal pursuant to 28 U.S.C. § 1442(a)(1) is an exception to the general rule requiring all named defendants to join in the removal petition. *See Akin v. Ashland Chem. Co.*, 156 F.3d 1030, 1034 (10th Cir. 1998); *Ely Valley Mines, Inc. v. Hartford Acc. &Indem. Co.*, 644 F.2d 1310, 1314 (9th Cir. 1981); *Fowler v. Southern Bell Te.& Tel. Co.*, 343 F.2d 150, 152 (5th Cir. 1965); *Bradford v. Harding*, 284 F.2d 307, 310 (2d Cir. 1960). Pursuant to 28 U.S.C. § 1441(b), because this is a "civil action of which the district courts have original jurisdiction" under § 1442(a)(1), it is "removable without regard to the citizenship or residence of the parties."

14.     A copy of the Notice of Filing of Notice of Removal is attached hereto as Exhibit E.

15.     Viad requests the opportunity to brief and respond, both in writing and orally, to any Motion for Remand filed by Plaintiff.

**WHEREFORE**, pursuant to the foregoing authorities and in conformance with the requirements set forth in 28 U.S.C. § 1446(a) and (b), defendant Viad removes this action from the Court of Common Pleas, Philadelphia County, Commonwealth of Pennsylvania.

Respectfully submitted,

**MARKS, O'NEILL, O'BRIEN,
DOHERTY & KELLY, P.C.**

Kevin J. O'Brien
Identification No. 38393
One Penn Center
1617 JFK Blvd., Suite 1010
Philadelphia, PA  19103
(215)  564-6688
Attorney for Defendant,
Viad Corp, Improperly Pleaded as
Viad Corp., f/k/a Dial Corp. as successor-in-interest to Griscom-Russell Company

DATED: January 29, 2020

## CERTIFICATE OF SERVICE

The undersigned here certifies that a true and correct copy of the foregoing NOTICE OF

REMOVAL was served by U.S. First Class Mail on Plaintiff's counsel and electronically served,

upon all counsel of record on this 29th day of January, 2020.

<div style="margin-left: 50%;">

**MARKS, O'NEILL, O'BRIEN,<br>DOHERTY & KELLY, P.C.**

_____
Kevin J. O'Brien
Identification No. 38393
One Penn Center
1617 JFK Blvd., Suite 1010
Philadelphia, PA  19103
(215)  564-6688
Attorney for Defendant,
Viad Corp, Improperly Pleaded as
Viad Corp., f/k/a Dial Corp., as successor-
in-interest to Griscom-Russell Company

</div>

{PH503890.1}

# EXHIBIT A

MAUNE RAICHLE HARTLEY
FRENCH & MUDD, LLC
By: Jason Yampolsky, Esquire
Identification No. 324961
230 S. Broad Street, Suite 1010
Philadelphia, PA 19102
(800) 358-5922

**Attorneys for Plaintiffs**

|  |  |
|---|---|
| RUTH F. HIMES, Executor for the Estate of CARL L. REESER, deceased, and MARIAN L. REESER, his wife<br>607 Christenson Road<br>Deer Lodge, TN 37726 | : COURT OF COMMON PLEAS<br>:<br>:<br>: PHILADELPHIA COUNTY<br>:<br>: DECEMBER TERM, 2019<br>: |
| Plaintiffs, | : NO.<br>: |
| vs. | :<br>: |
| A. DUIE PYLE, INC., *et al.* | : ASBESTOS CASE<br>: |
| Defendants. | : JURY TRIAL DEMANDED<br>: |

## SHERIFF'S LIST

A. DUIE PYLE, INC.                                **CHESTER COUNTY**
c/o Agent/Officer
650 Westtown Road
West Chester, PA 19381

A.O. SMITH CORPORATION                           **DAUPHIN COUNTY**
c/o CT Corporation System
600 North 2nd Street, Suite 401
Harrisburg, PA  17101

AIR & LIQUID SYSTEMS CORPORATION,                **DAUPHIN COUNTY**
successor-by-merger to Buffalo Pumps, Inc.
c/o Corporation Service Company
2595 Interstate Drive Suite 103
Harrisburg, PA 17110

AMETEK, INC., Individually and as successor      **DAUPHIN COUNTY**
-in-interest to Schutte & Koerting Company

c/o Corporation Service Company
2595 Interstate Drive Suite 103
Harrisburg, PA 17110


**ARMSTRONG INTERNATIONAL, INC.**          LEHIGH COUNTY
c/o Officer/Agent
1251 S. Cedar Crest Blvd. Ste. 209
Allentown, PA 18103

**ARVINMERITOR, INC.**                     DAUPHIN COUNTY
c/o CT Corporation System
600 North 2nd Street, Suite 401
Harrisburg, PA 17101

**BASF CATALYSTS, LLC**                    DAUPHIN COUNTY
c/o CT Corporation System
600 North 2nd Street, Suite 401
Harrisburg, PA 17101

**BAYER CORPORATION**                      DAUPHIN COUNTY
c/o Corporation Service Company
2595 Interstate Drive
Harrisburg, PA 17110

**BOEING COMPANY, THE, Individually and as**   DAUPHIN COUNTY
**to its Vertical Lift division**
c/o Corporation Service Company
2595 Interstate Drive
Harrisburg, PA 17110

**BRIGGS & STRATTON CORPORATION**          DAUPHIN COUNTY
c/o Corporation Service Company
2595 Interstate Drive Suite 103
Harrisburg, PA 17110

**CARLISLE INDUSTRIAL BRAKE &**            ERIE COUNTY
**FRICTION, INC. f/k/a Motion Control Industries, Inc.**
c/o United Agent Group Inc.
1001 State Street #1400
Erie, PA 16501

**CARRIER CORPORATION**                    DAUPHIN COUNTY
c/o CT Corporation System
600 North 2nd Street, Suite 401
Harrisburg, PA 17101

**CBS CORPORATION, a Delaware Corporation**
**f/k/a Viacom, Inc., successor-by-merger to CBS**
**Corporation, A Pennsylvania Corporation f/k/a**
**Westinghouse Electric Corporation**
**c/o Corporation Service Company**
**2595 Interstate Drive, Suite 103**
**Harrisburg, PA 17110**

**DAUPHIN COUNTY**

**CLARIANT CORPORATION, Individually and**
**as successor-in-interest to Sud-Chemie, Inc.**
**f/k/a Southern Talc Company**
**c/o Corporation Service Company**
**2595 Interstate Drive, Suite 103**
**Harrisburg, PA 17110**

**DAUPHIN COUNTY**

**CLEAVER-BROOKS, INC., f/k/a Cleaver-Brooks,**
**a division of Aqua-Chem, Inc.**
**c/o Corporation Service Company**
**2595 Interstate Drive, Suite 103**
**Harrisburg, PA 17110**

**DAUPHIN COUNTY**

**CRANE CO.**
**c/o CT Corporation System**
**600 North 2nd Street, Suite 401**
**Harrisburg, PA  17101**

**DAUPHIN COUNTY**

**DAIMLER TRUCKS NORTH AMERICA, LLC**
**c/o CT Corporation System**
**600 North 2nd Street, Suite 401**
**Harrisburg, PA  17101**

**DAUPHIN COUNTY**

**DEERE & COMPANY**
**c/o CT Corporation System**
**600 North 2nd Street, Suite 401**
**Harrisburg, PA  17101**

**DAUPHIN COUNTY**

**EATON CORPORATION**
**c/o CT Corporation System**
**600 North 2nd Street, Suite 401**
**Harrisburg, PA  17101**

**DAUPHIN COUNTY**

**ELECTROLUX HOME PRODUCTS, INC., as**
**successor-in-interest to Copes-Vulcan**
**c/o CT Corporation System**
**600 North 2nd Street, Suite 401**

**DAUPHIN COUNTY**

Harrisburg, PA  17101

ELLIOTT COMPANY f/k/a Elliott   DAUPHIN COUNTY
Turbomachinery Company
c/o CT Corporation System
600 North 2nd Street, Suite 401
Harrisburg, PA  17101

FLOWSERVE US, INC., solely as successor to  DAUPHIN COUNTY
Edward Valve & Manufacturing Company
c/o CT Corporation System
600 North 2nd Street, Suite 401
Harrisburg, PA 17101

FLOWSERVE US, INC., successor-in-interest to  DAUPHIN COUNTY
Nordstrom Valve Company
c/o CT Corporation System
600 North 2nd Street, Suite 401
Harrisburg, PA 17101

FLSMIDTH DORR-OLIVER INC. f/k/a   DAUPHIN COUNTY
GL&V/Dorr-Oliver Inc.
c/o CT Corporation System
600 North 2nd Street, Suite 401
Harrisburg, PA  17101

FMC CORPORATION,     DAUPHIN COUNTY
Individually and as successor-in-interest
to Chicago Pump Company and Northern Pump Company
c/o CT Corporation System
600 North 2nd Street, Suite 401
Harrisburg, PA 17101

GARDNER DENVER, INC.    DAUPHIN COUNTY
c/o CT Corporation System
600 North 2nd Street, Suite 401
Harrisburg, PA 17101

GENERAL ELECTRIC COMPANY   PHILADELPHIA COUNTY
c/o Officer/Agent
1515 Market Street Suite 1210
Philadelphia, PA 19102

GOODRICH CORPORATION f/k/a The BF  DAUPHIN COUNTY
Goodrich Company
c/o CT Corporation System

600 North 2nd Street, Suite 401
Harrisburg, PA 17101

**GOULDS PUMPS, INCORPORATED**          DAUPHIN COUNTY
c/o CT Corporation System
600 North 2nd Street, Suite 401
Harrisburg, PA  17101

**GRINNELL, LLC**          DAUPHIN COUNTY
c/o CT Corporation System
600 North 2nd Street, Suite 401
Harrisburg, PA 17101

**HENNESSY INDUSTRIES, LLC**          DAUPHIN COUNTY
c/o CT Corporation System
600 North 2nd Street, Suite 401
Harrisburg, PA 17101

**HONEYWELL INTERNATIONAL, INC.,**          DAUPHIN COUNTY
**Individually and as successor to AlliedSignal, Inc.,**
**The Bendix Corporation and Warner & Swasey Company**
c/o Corporation Service Company
2595 Interstate Drive, Suite 103
Harrisburg, PA 17110

**IMO INDUSTRIES, INC., Individually and as**          DAUPHIN COUNTY
**successor-in-interest DeLaval Turbine Inc.**
c/o CT Corporation System
600 North 2nd Street, Suite 401
Harrisburg, PA 17101

**INGERSOLL-RAND COMPANY**          DAUPHIN COUNTY
c/o Corporation Service Company
2595 Interstate Drive, Suite 103
Harrisburg, PA 17110

**INTERNATIONAL PAPER COMPANY**          DAUPHIN COUNTY
c/o CT Corporation System
600 North 2nd Street, Suite 401
Harrisburg, PA 17101

**ITT CORPORATION, Individually and as**          DAUPHIN COUNTY
**successor-in-interest to Bell & Gossett Pump Company**
c/o CT Corporation System
600 North 2nd Street, Suite 401
Harrisburg, PA 17101

Case ID: 191203279

**ITT CORPORATION, Individually and as**
**successor-in-interest to Kennedy Valve**
**Manufacturing Company**
**c/o CT Corporation System**
**600 North 2nd Street, Suite 401**
**Harrisburg, PA 17101**

**DAUPHIN COUNTY**

**ITT CORPORATION, Individually and as successor**
**-in-interest to Hoffman Specialty Steam Traps**
**c/o CT Corporation System**
**600 North 2nd Street, Suite 401**
**Harrisburg, PA 17101**

**DAUPHIN COUNTY**

**KOHLER CO.**
**c/o CT Corporation System**
**600 North 2nd Street, Suite 401**
**Harrisburg, PA 17101**

**DAUPHIN COUNTY**

**MACK TRUCKS, INC.**
**c/o Agent/Officer**
**2402 Lehigh Parkway South**
**Allentown, Pennsylvania, 18103**

**LEHIGH COUNTY**

**METSO MINERALS INDUSTRIES, INC., as**
**successor-in-interest to Keeler Dorr-Oliver Boiler Company**
**c/o CT Corporation System**
**600 North 2nd Street, Suite 401**
**Harrisburg, PA 17101**

**DAUPHIN COUNTY**

**MONSANTO COMPANY**
**c/o Corporation Service Company**
**2595 Interstate Drive Suite 103**
**Harrisburg, PA 17110**

**DAUPHIN COUNTY**

**SAINT GOBAIN ABRASIVES INC., as**
**Successor to Norton Company**
**c/o Officer/Agent**
**20 Moores Road**
**Malvern, PA 19355**

**CHESTER COUNTY**

**SABIC INNOVATIVE PLASTICS US LLC,**
**Individually and as successor-in-interest to**
**General Electric Plastics**
**c/o CT Corporation System**
**600 North 2nd Street, Suite 401**

**DAUPHIN COUNTY**

Harrisburg, PA 17101

**SPIRAX SARCO, INC.**
c/o CT Corporation System
600 North 2nd Street, Suite 401
Harrisburg, PA 17101

**DAUPHIN COUNTY**

**TMS INTERNATIONAL HOLDING
CORPORATION, f/k/a Tube City IMS Corporation**
United Agent Group Inc.
1001 State Street #1400
Erie, PA 16501

**ERIE COUNTY**

**TRANE U.S. INC.**
c/o Corporation Service Company
2595 Interstate Drive, Suite 103
Harrisburg, PA 17110

**DAUPHIN COUNTY**

**VIAD CORP. f/k/a The Dial Corp. as
successor-in-interest to Griscom-Russell Company**
c/o CT Corporation System
600 North 2nd Street, Suite 401
Harrisburg, PA  17101

**DAUPHIN COUNTY**

**VOLVO GROUP NORTH AMERICA, LLC,**
Individually and as successor to White Motor
Company and Autocar Company
c/o CT Corporation System
600 North 2nd Street, Suite 401
Harrisburg, PA 17101

**DAUPHIN COUNTY**

**UNION CARBIDE CORPORATION**
c/o CT Corporation System
600 North 2nd Street, Suite 401
Harrisburg, PA 17101

**DAUPHIN COUNTY**

**YORK INTERNATIONAL CORPORATION,**
as successor-in-interest to York Corporation
c/o CT Corporation System
600 North 2nd Street, Suite 401
Harrisburg, PA 17101

**DAUPHIN COUNTY**

Case ID: 191203279

MAUNE RAICHLE HARTLEY
FRENCH & MUDD, LLC
By: Jason Yampolsky, Esquire
Identification No. 324961
230 S. Broad Street, Suite 1010
Philadelphia, PA 19102
(800) 358-5922

**Attorneys for Plaintiffs**

|  |  |
|---|---|
| RUTH F. HIMES, Executor for the Estate of CARL L. REESER, deceased, and MARIAN L. REESER, his wife<br>607 Christenson Road<br>Deer Lodge, TN 37726 | COURT OF COMMON PLEAS<br><br>PHILADELPHIA COUNTY<br><br>DECEMBER TERM, 2019 |
| Plaintiffs, | NO. |
| vs. | |
| A. DUIE PYLE, INC., *et al.* | ASBESTOS CASE |
| Defendants. | JURY TRIAL DEMANDED |

## DEFENDANTS' LIST

| | |
|---|---|
| **A. DUIE PYLE, INC.**<br>**c/o Agent/Officer**<br>**650 Westtown Road**<br>**West Chester, PA 19381** | **GVW Group LLC, Individually and as successor to Autocar Company**<br>**c/o National Registered Agents Inc.**<br>**208 So LaSalle Street, Suite 814**<br>**Chicago, IL 60604** |
| **A.O. SMITH CORPORATION**<br>**c/o CT Corporation System**<br>**600 North 2nd Street, Suite 401**<br>**Harrisburg, PA  17101** | **HARWICK STANDARD DISTRIBUTION CORPORATION**<br>**CT Corporation System**<br>**208 So LaSalle Street, Suite 814**<br>**Chicago, IL 60604** |
| **ABB, INC., as successor-in-interest to ITE Electrical Products Co.**<br>**CT Corporation System**<br>**208 So. LaSalle St. Suite 814**<br>**Chicago, IL 60604** | **HENNESSY INDUSTRIES, LLC**<br>**c/o CT Corporation System**<br>**600 North 2nd Street, Suite 401**<br>**Harrisburg, PA 17101** |
| **AIR & LIQUID SYSTEMS CORPORATION, successor-by-merger to** | **HONEYWELL INTERNATIONAL, INC.,** |

Buffalo Pumps, Inc.
c/o Corporation Service Company
2595 Interstate Drive Suite 103
Harrisburg, PA 17110

AMETEK, INC., Individually and as
successor-in-interest to Schutte & Koerting
Company
c/o Corporation Service Company
2595 Interstate Drive Suite 103
Harrisburg, PA 17110

ARMSTRONG INTERNATIONAL, INC.
c/o Officer/Agent
1251 S. Cedar Crest Blvd. Ste. 209
Allentown, PA 18103

ARVINMERITOR, INC.
c/o CT Corporation System
600 North 2nd Street, Suite 401
Harrisburg, PA 17101

AURORA PUMP COMPANY
13320 Ballantyne Corporate Place
Charlotte, NC 28277

AUTOCAR, LLC
c/o Agent/Officer
National Registered Agents, Inc.
160 Greentree Dr., Suite 101
Dover, DE 19904

BASF CATALYSTS, LLC
c/o CT Corporation System
600 North 2nd Street, Suite 401
Harrisburg, PA 17101

BAYER CORPORATION
c/o Corporation Service Company
2595 Interstate Drive
Harrisburg, PA 17110

BOEING COMPANY, THE, Individually
and as to its Vertical Lift division
c/o Corporation Service Company
2595 Interstate Drive

Individually and as successor to
AlliedSignal, Inc., The Bendix Corporation
and Warner & Swasey Company
c/o Corporation Service Company
2595 Interstate Drive, Suite 103
Harrisburg, PA 17110

IMO INDUSTRIES, INC., Individually
and as successor-in-interest DeLaval
Turbine Inc.
c/o CT Corporation System
600 North 2nd Street, Suite 401
Harrisburg, PA 17101

INDUSTRIAL HOLDINGS
CORPORATION f/k/a The Carborundum
Company
c/o Prentice-Hall Corporation System Inc.
80 State Street
Albany, NY 12207

INGERSOLL-RAND COMPANY
c/o Corporation Service Company
2595 Interstate Drive, Suite 103
Harrisburg, PA 17110

INTERNATIONAL PAPER COMPANY
c/o CT Corporation System
600 North 2nd Street, Suite 401
Harrisburg, PA 17101

ITT CORPORATION, Individually and as
successor-in-interest to Bell & Gossett
Pump Company
c/o CT Corporation System
600 North 2nd Street, Suite 401
Harrisburg, PA 17101

ITT CORPORATION, Individually and as
successor-in-interest to Kennedy Valve
Manufacturing Company
c/o CT Corporation System
600 North 2nd Street, Suite 401
Harrisburg, PA 17101

Harrisburg, PA 17110

**BOILER SUPPLY COMPANY, INCORPORATED**
c/o Wallace E. Lunn
2400 Kline Ave.
Nashville, TN 37211

**BORGWARNER INC.**
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

**BORGWARNER MORSE TEC LLC, as successor-by-merger to Borg-Warner Corporation**
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

**BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC**
c/o United Agent Group Inc.
119 E. Court Street
Cincinnati, OH 45202

**BRIGGS & STRATTON CORPORATION**
c/o Corporation Service Company
2595 Interstate Drive Suite 103
Harrisburg, PA 17110

**CARLISLE INDUSTRIAL BRAKE & FRICTION, INC. f/k/a Motion Control Industries, Inc.**
c/o United Agent Group Inc.
1001 State Street #1400
Erie, PA 16501

**CARRIER CORPORATION**
c/o CT Corporation System
600 North 2nd Street, Suite 401
Harrisburg, PA 17101

**ITT CORPORATION, Individually and as successor-in-interest to Hoffman Specialty Steam Traps**
c/o CT Corporation System
600 North 2nd Street, Suite 401
Harrisburg, PA 17101

**KOHLER CO.**
c/o CT Corporation System
600 North 2nd Street, Suite 401
Harrisburg, PA 17101

**LAWN-BOY INC.**
c/o Agent/Officer
8111 Lyndale Ave. S
Bloomington, MN 55420

**LEBLOND LTD.**
c/o Jennifer L. Whitt of Calfee, Halter & Griswold LLP
1405 East 6th Street
Cleveland, OH 44114

**MACK TRUCKS, INC.**
c/o Agent/Officer
2402 Lehigh Parkway South
Allentown, Pennsylvania, 18103

**MCNEIL (OHIO) CORPORATION, Individually and as successor-in-interest to McNeil Akron and McNeil Corporation**
c/o Corporation Service Company
50 West Broad St., Suite 1330
Columbus, OH 43215

**MCNEIL & NRM, INC.**
c/o United States Corporation Company
50 West Broad Street Suite 1330
Colombus, OH 43215

**METROPOLITAN LIFE INSURANCE COMPANY**
c/o CT Corporation System
208 South LaSalle Street, Suite 814
Chicago, IL 60604

CBS CORPORATION, a Delaware
Corporation f/k/a Viacom, Inc., successor-
by-merger to CBS Corporation, A
Pennsylvania Corporation f/k/a
Westinghouse Electric Corporation
c/o Corporation Service Company
2595 Interstate Drive, Suite 103
Harrisburg, PA 17110

CLARIANT CORPORATION,
Individually and as successor-in-interest to
Sud-Chemie, Inc. f/k/a Southern Talc
Company
c/o Corporation Service Company
2595 Interstate Drive, Suite 103
Harrisburg, PA 17110

CLEAVER-BROOKS, INC., f/k/a Cleaver-
Brooks, a division of Aqua-Chem, Inc.
c/o Corporation Service Company
2595 Interstate Drive, Suite 103
Harrisburg, PA 17110

CRANE CO.
c/o CT Corporation System
600 North 2nd Street, Suite 401
Harrisburg, PA  17101

CROSBY VALVE, LLC
c/o CT Corporation System
155 Federal St. Suite 700
Boston, MA 02110

DAIMLER TRUCKS NORTH AMERICA,
LLC
c/o CT Corporation System
600 North 2nd Street, Suite 401
Harrisburg, PA  17101

DCO, LLC, f/k/a Dana Companies,
Individually and successor-in-interest to
Victor Gasket Manufacturing Company
and Spicer Parts
c/o CT Corporation System
4701 Cox Rd., Suite 285
Glen Allen, VA 23060

METSO MINERALS INDUSTRIES, INC.,
as successor-in-interest to Keeler Dorr-
Oliver Boiler Company
c/o CT Corporation System
600 North 2nd Street, Suite 401
Harrisburg, PA 17101

MONSANTO COMPANY
c/o Corporation Service Company
2595 Interstate Drive Suite 103
Harrisburg, PA 17110

NEWELL BRANDS INC., Individually
and as successor-in-interest to Graco
Children's Products, Inc.
c/o Corporation Service Company
251 Little Falls Drive
Wilmington, DE 19808

PNEUMO ABEX LLC, Individually and as
successor-by-merger to Pneumo Abex
Corporation, successor-in-interest to Abex
Corporation, f/k/a American Brake Shoe
Company, f/k/a American Brake Shoe and
Foundry Company including the American
Brakeblock Division, successor-by-merger
to the American Brake Shoe and Foundry
Company and The American Brakeblock
Corporation, f/k/a The American Brake
Materials Corporation
c/o Corporation Service Company
251 Little Falls Drive
Wilmington, DE 19808

SABIC INNOVATIVE PLASTICS US
LLC, Individually and as successor-in-
interest to General Electric Plastics
c/o CT Corporation System
600 North 2nd Street, Suite 401
Harrisburg, PA 17101

SAINT GOBAIN ABRASIVES INC., as
Successor to Norton Company
c/o Officer/Agent
One New Bond Street
Worcester, MA 01606

**DEERE & COMPANY**
c/o CT Corporation System
600 North 2nd Street, Suite 401
Harrisburg, PA  17101

**EATON CORPORATION**
c/o CT Corporation System
600 North 2nd Street, Suite 401
Harrisburg, PA  17101

**ELECTROLUX HOME PRODUCTS,
INC., as successor-in-interest to Copes-
Vulcan**
c/o CT Corporation System
600 North 2nd Street, Suite 401
Harrisburg, PA  17101

**ELLIOTT COMPANY f/k/a Elliott
Turbomachinery Company**
c/o CT Corporation System
600 North 2nd Street, Suite 401
Harrisburg, PA  17101

**FIVES GIDDINGS & LEWIS, LLC,
Individually and as successor-in-interest to
Kearney & Trecker Corporation**
c/o CT Corporation System
301 S. Bedford St. Ste. 1
Madison, WI 53703

**FLOWSERVE US, INC., solely as
successor to Edward Valve &
Manufacturing Company**
c/o CT Corporation System
600 North 2nd Street, Suite 401
Harrisburg, PA  17101

**FLOWSERVE US, INC., successor
in-interest to Nordstrom Valve
Company**
c/o CT Corporation System
600 North 2nd Street, Suite 401
Harrisburg, PA  17101

**SCHRAMM, INC.**
c/o CT Corporation System
28 Liberty St.
New York, NY 10005

**SPIRAX SARCO, INC.**
c/o CT Corporation System
600 North 2nd Street, Suite 401
Harrisburg, PA 17101

**SUPERIOR LIDGERWOOD MUNDY
CORPORATION**
c/o Arthur Robert Woodman
302 Grand Avenue
Superior, WI 54880

**TACO PUMPS**
c/o Corporation Service Company
222 Jefferson Boulevard, Suite 200
Warwick, RI 02888

**TMS INTERNATIONAL
CORPORATION, Individually and as
successor to White Motor Company**
c/o United Agent Group Inc.
3411 Silverside Road
Tatnall Building #104
Wilmington, DE 19810

**TMS INTERNATIONAL HOLDING
CORPORATION, f/k/a Tube City IMS
Corporation**
United Agent Group Inc.
1001 State Street #1400
Erie, PA 16501

**TRANE U.S. INC.**
c/o Corporation Service Company
2595 Interstate Drive, Suite 103
Harrisburg, PA 17110

**VIAD CORP. f/k/a The Dial Corp. as
successor-in-interest to Griscom-Russell
Company**
c/o CT Corporation System

**FLSMIDTH DORR-OLIVER INC. f/k/a GL&V/Dorr-Oliver Inc.**
c/o CT Corporation System
600 North 2nd Street, Suite 401
Harrisburg, PA  17101

**FMC CORPORATION,**
**Individually and as successor-in-interest**
**to Chicago Pump Company and Northern**
**Pump Company**
c/o CT Corporation System
600 North 2nd Street, Suite 401
Harrisburg, PA 17101

**GARDNER DENVER, INC.**
c/o CT Corporation System
600 North 2nd Street, Suite 401
Harrisburg, PA 17101

**GENERAL ELECTRIC COMPANY**
c/o Officer/Agent
1515 Market Street Suite 1210
Philadelphia, PA 19102

**GOODRICH CORPORATION f/k/a The**
**BF Goodrich Company**
c/o CT Corporation System
600 North 2nd Street, Suite 401
Harrisburg, PA 17101

**GOULDS PUMPS, INCORPORATED**
c/o CT Corporation System
600 North 2nd Street, Suite 401
Harrisburg, PA  17101

**GRINNELL, LLC**
c/o CT Corporation System
600 North 2nd Street, Suite 401
Harrisburg, PA 17101

600 North 2nd Street, Suite 401
Harrisburg, PA  17101

**VIKING PUMP, INC.**
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

**VOLVO GROUP NORTH AMERICA,**
**LLC, Individually and as successor to**
**White Motor Company and Autocar**
**Company**
c/o CT Corporation System
600 North 2nd Street, Suite 401
Harrisburg, PA 17101

**UNION CARBIDE CORPORATION**
c/o CT Corporation System
600 North 2nd Street, Suite 401
Harrisburg, PA 17101

**WARREN PUMPS, LLC**
c/o Corporation Trust Corporation
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

**WEIR VALVE & CONTROLS USA, INC.**
**as successor-in-interest to Atwood &**
**Morrill Valve Company**
c/o CT Corporation System
155 Federal St. Ste. 700
Boston, Massachusetts 02110

**YORK INTERNATIONAL**
**CORPORATION, as successor-in-interest**
**to York Corporation**
c/o CT Corporation System
600 North 2nd Street, Suite 401
Harrisburg, PA 17101

Case ID: 191203279

**MAUNE RAICHLE HARTLEY**
**FRENCH & MUDD, LLC**
**By: Jason Yampolsky, Esquire**
**Identification No. 324961**
**230 S. Broad Street, Suite 1010**
**Philadelphia, PA 19102**
**(800) 358-5922**

**Attorneys for Plaintiffs**

| | | |
|---|---|---|
| **RUTH F. HIMES, Executor for the Estate of** | : | COURT OF COMMON PLEAS |
| **CARL L. REESER, deceased, and MARIAN L.** | : | |
| **REESER, his wife** | : | PHILADELPHIA COUNTY |
| 607 Christenson Road | : | |
| Deer Lodge, TN 37726 | : | DECEMBER TERM, 2019 |
| | : | |
| Plaintiffs, | : | NO. |
| | : | |
| vs. | : | |
| | : | ASBESTOS CASE |
| **A. DUIE PYLE, INC.,** *et al.* | : | |
| | : | JURY TRIAL DEMANDED |
| Defendants. | : | |
| | : | |

## CIVIL ACTION COMPLAINT

Plaintiffs incorporate by reference Plaintiffs' Master Long Form Complaint In Re:

Asbestos Litigation in Philadelphia County Court of Common Pleas, filed as of DECEMBER

Term 1986, No. 8610-0001. Pursuant to an Order dated NOVEMBER 30, 1986, and signed by the

Honorable Richard B. Klein, the following Short Form Complaint is utilized in this asbestos action.

1.    This Complaint involves the claims of the following persons:

    a)    Plaintiff - Executor

| | |
|---|---|
| Name: | Ruth F. Himes |
| Address: | 607 Christenson Road |
| | Deer Lodge, TN 37726 |
| Social Security: | xxx-xx-6610 |
| Date of Birth: | 12/04/1959 |

        Plaintiff - Decedent

Case ID: 191203279

Name:              Carl L. Reeser
Address:           607 Christenson Road
                   Deer Lodge, TN 37726
Social Security:   xxx-xx-1816
Date of Birth:     07/19/1938

Plaintiff – Decedent's wife
Name:              Marian L. Reeser
Address:           607 Christenson Road
                   Deer Lodge, TN 37726
Social Security:   xxx-xx-1722
Date of Birth:     01/17/1938

2.      The Defendants are those companies listed in the caption.

3.      Plaintiffs hereby incorporate by reference the following Counts from the Master Long Form Complaint: Counts I, II, III, IV, VI, VII, IX, and X.

4.      Decedent Carl L. Reeser's asbestos exposure is as follows:

a.      From 1954 to 1956, Decedent Carl L. Reeser worked as a truck driver/mechanic assistant for A. Duie Pyle in West Chester, Pennsylvania. Mr. Reeser was present while mechanics performed mechanical maintenance and repairs, including the replacement of asbestos-containing products, including, but not limited to, asbestos brakes, brake linings, brake blocks, brake pads, and other friction products, including friction brake products manufactured, produced, and sold by Bendix Corporation, World Bestos Corporation, and other companies, on the fleet trucks. The asbestos-containing friction material was grinded using Ammco brake grinders. Mr. Reeser was also present while mechanics performed mechanical maintenance and repairs, including the replacement of asbestos-containing clutches, clutch discs, clutch plates, and other friction products

manufactured, produced, and sold by the Borg-Warner Corporation and other companies, on the fleet trucks. The fleet trucks were manufactured by Freightliner, White Motor Company, Mack, and Autocar Company. Mr. Reeser swept up the floor of the maintenance shop where such automotive maintenance and repair work was performed. This created visible asbestos-containing dust in the air that he inhaled. Additionally, Carl L. Reeser's father, Russell Reeser, deceased, was head mechanic at A. Duie Pyle in West Chester, Pennsylvania. Asbestos-laden dust created by working around asbestos-containing products accumulated on his father's skin, hair, and clothing, which was brought into Decedents' home. As a result, the home became contaminated with asbestos fibers. Decedent Carl L. Reeser was repeatedly exposed to asbestos dust that his father brought into the home on his hair, skin, and clothing from this work with and around asbestos and asbestos-containing products. As a result of inhalation, breathing and other exposure to these fibers, Decedent Carl L. Reeser developed mesothelioma.

b.   From 1956 to 1959, Plaintiff Marian L. Reeser's husband, Carl L. Reeser, deceased, served as a machinist mate in the U.S. Navy. Mr. Reeser trained to be a machinist mate at the Great Lakes Naval Training Center and then served aboard the *USS Hancock (CVA-19)*, in the engine, fire, and boiler rooms and worked with various asbestos-containing equipment (e.g., packing, gaskets, boilers, pumps, valves, turbines, evaporators, steam traps, etc.) throughout his service. Mr. Reeser worked with asbestos-containing

gaskets and packing on pumps manufactured by DeLaval, Gardner Denver, Goulds, and Ingersoll Rand, among others. Mr. Reeser worked with asbestos-containing packing and gaskets on valves manufactured by Bell & Gossett, among others. Mr. Reeser worked with asbestos-containing gaskets on steam traps manufactured by Armstrong, among others. Mr. Reeser worked with asbestos-containing turbines manufactured by General Electric and Westinghouse.

c.   From 1959 to 1966, Decedent Carl L. Reeser worked as a maintenance mechanic for Kennett Fabricators, a subsidiary of American Viscose Corporation previously owned by Monsanto and FMC, in Kennett Square, Pennsylvania. Mr. Reeser performed maintenance and repairs to lathes, milling machines, boring mills, boilers, and other machinery. His job duties required him to work in the vicinity of other tradesmen performing work. Mr. Reeser worked with and repaired asbestos-containing lathes manufactured by LeBlond and Warner & Swasey. Mr. Reeser worked with and repaired asbestos-containing milling machines manufactured by Milwaukee. Mr. Reeser worked with and repaired asbestos-containing boring mills manufactured by Giddings & Lewis. Mr. Reeser worked with asbestos-containing gaskets and packing on pumps manufactured by Borg Warner, DeLaval, Goulds, Ingersoll Rand, Schramm, Viking, and Chicago, among others. Mr. Reeser worked with asbestos-containing packing and gaskets on valves manufactured by Copes-Vulcan, Crane, Grinnell, and Rockwell, among others. Mr. Reeser worked with asbestos-containing

gaskets on steam traps manufactured by Armstrong and Hoffman, among others.

d.  From 1966 to 1970, Decedent Carl L. Reeser worked as a maintenance mechanic for Boeing Vertol f/k/a Piasecki Helicopter Corporation in Morton, Pennsylvania. Mr. Reeser performed maintenance and repairs to machinery throughout the plant. His job duties required him to work in the vicinity of other tradesmen performing work. Mr. Reeser performed repair work on lathes, pumps, valves, and steam traps, which caused him to be exposed to asbestos-containing dust. Mr. Reeser worked with asbestos-containing gaskets and packing on pumps manufactured by Buffalo and Taco, among others. Mr. Reeser worked with asbestos-containing packing and gaskets on valves manufactured by Crosby, Edwards, and Kennedy, among others. Mr. Reeser worked with asbestos-containing gaskets on steam traps manufactured by Sarco, among others. Mr. Reeser also worked with asbestos-containing grinding wheels manufactured by Carborundum and Norton, which wore down during use and emitted asbestos-containing dust.

e.  From 1969 to 1986, Decedent Carl L. Reeser worked in maintenance for BF Goodrich in Oaks, Pennsylvania. Mr. Reeser performed maintenance and repairs to machinery, including but not limited to boilers, pumps, valves, steam traps, lathes, shredders, tire machines, and other various tire building machines. His job duties required him to work in the vicinity of other tradesmen performing work. The work that he performed and the worked

that others performed in his presence caused him to be exposed to asbestos-containing dust.

f.   From 1986 to 1987, Decedent Carl L. Reeser worked as a maintenance mechanic for Graco Metal Products a/k/a Graco Children's Products in Elverson, Pennsylvania. His job duties required him to work in the vicinity of other tradesmen performing work with asbestos-containing materials.

g.   From 1987 to 2014, Decedent Carl L. Reeser worked as a maintenance mechanic for Zeneca Inc. l/k/a LNP Engineering Plastics l/k/a General Electric Company, l/k/a Sabic Innovative Plastics US in Thorndale, Pennsylvania. His job duties required him to work in the vicinity of other tradesmen performing work with asbestos-containing materials.

h.   During the 1970s and 1980s, Mr. Reeser had his own lawnmower repair business. He repaired and replaced asbestos-containing clutches and head gaskets, which created asbestos-containing dust that he inhaled. The lawnmower engines were manufactured by Briggs & Stratton and Kohler. The lawnmowers were manufactured by Lawnboy and John Deere.

5.   Decedent Carl L. Reeser passed away on or about October 30, 2019 from mesothelioma. Decedent's mesothelioma was a direct and proximate result of his exposure to asbestos. This exposure arose from his aforementioned work history.

6.   Decedent's smoking history (if any):

a.   over one (1) pack per day or less beginning in approximately 1955 through 1990s.

7.   Decedent's wages during his last full year of employment were:

To be supplied.

8.      Decedents' dependent is: MARIAN L. REESER

9.      Employer Defendant Count

The allegations set forth in Count VII in the Master Long Form Complaint In Re: Asbestos Litigation are hereby made against the following employers: Defendants A. DUIE PYLE, INC.; FMC CORPORATION; GOODRICH CORPORATION f/k/a The BF Goodrich Company; BOEING COMPANY, THE, Individually and as to its Vertical Lift division; MONSANTO COMPANY, NEWELL BRANDS INC., Individually and as successor-in-interest to Graco Children's Products, Inc.; and SABIC INNOVATIVE PLASTICS US LLC, Individually and as successor-in-interest to General Electric Plastics, for whom Decedent was employed during the following times pursuant to the case of Tooey v. AK Steel Corporation, 81 A.3d 851 (Pa. 2013).

a.      As an employee of A. Duie Pyle, working in Pennsylvania, Decedent worked with and around asbestos-containing products, including brakes and clutches on trucks, from 1954 to 1956. Decedent was exposed to asbestos fibers on a regular basis, in the form of asbestos-containing brakes and clutches.

b.      As an employee of Kennett Fabricators, a subsidiary of American Viscose Corporation previously owned by Monsanto and FMC, working in Pennsylvania, Decedent worked with asbestos-containing products from 1959 to 1966. Decedent was exposed to asbestos fibers on a regular basis, in the form of asbestos-containing lathes, milling machines, boring mills, boilers, pumps, valves, and steam traps.

c.      As an employee of Boeing Vertol f/k/a Piasecki Helicopter Corporation,

working in Pennsylvania, Decedent worked with asbestos-containing products from 1966 to 1970. Decedent was exposed to asbestos fibers on a regular basis, in the form of asbestos-containing lathes, pumps, valves, and steam traps.

d.   As an employee of BF Goodrich, working in Pennsylvania, Decedent worked with asbestos-containing products from 1969 to 1986. Decedent was exposed to asbestos fibers on a regular basis, in the form of asbestos-containing machinery, including but not limited to boilers, pumps, valves, steam traps, lathes, shredders, tire machines, and other various tire building machines.

e.   As an employee of Graco Metal Products a/k/a Graco Children's Products, working in Pennsylvania, Decedent worked with asbestos-containing products from 1986 to 1987. Decedent was exposed to asbestos fibers on a regular basis, in the form of asbestos-containing machinery and equipment, from his work in the vicinity of other tradesmen performing work with asbestos-containing materials.

f.   As an employee of Zeneca Inc. l/k/a LNP Engineering Plastics l/k/a General Electric Company l/k/a Sabic Innovative Plastics US, working in Pennsylvania, Decedent worked with asbestos-containing products during the period of 1987 to 2014. Decedent was exposed to asbestos fibers on a regular basis, in the form of asbestos-containing machinery and equipment, from his work in the vicinity of other tradesmen performing work with asbestos-containing materials.

g.   Decedent worked with and around asbestos and asbestos-containing materials and products present and being used throughout these facilities. His work took him to various areas within the facilities.

WHEREFORE, Plaintiffs demand judgment against Defendants jointly, severally and/or in the alternative, for such damages as she be permitted pursuant to the laws of Pennsylvania, together with interest thereon, cost of suit and attorneys' fees.

## COUNT AGAINST METROPOLITAN LIFE INSURANCE COMPANY

10.   Plaintiffs incorporate the aforementioned paragraphs by reference hereto as fully set forth herein.

11.   In or about the year 1930, and at various times prior and subsequent thereto, up to and including the present time, defendant Metropolitan Life Insurance Company undertook and assumed a duty to provide the asbestos industry, the scientific community and company users of asbestos with information, inspections, instructions, supervision, recommendations, assistance, notices, reports, methods, findings, cautions, warnings, advice, designs, equipment, safeguards, guidance and services to properly, adequately and reasonably provide safe working conditions, all allegedly to preserve and protect the life, health and safety of employees exposed to asbestos, including Decedent and his co-workers, and particularly to protect them from the dangerous and defective properties of asbestos, asbestos products and compounds and/or other dangerous substances at or about the workplace.

12.   Plaintiffs aver that various employers and their employees, including Decedent and scientists and others similarly situated, were dependent upon the undertakings of Metropolitan to preserve and protect the life, health and safety of individuals, including Decedent, by not assisting the said companies in selling dangerous products.

13.     Metropolitan, by its active and passive negligence, failed to exercise the standard of care and skill it was obliged to exercise by reason of its aforesaid undertakings and assumption of duty, thereby causing, creating or permitting dangerous conditions and exposure to dangerous and defective substances; and thereby failing to properly safeguard Decedent and all others similarly situated.

14.     As a result of the aforesaid negligence of defendant Metropolitan, Decedent was injured.

WHEREFORE, Plaintiffs pray that this Honorable Court enter judgment on their behalf against the defendants, both jointly and severally, in an amount of One Million Dollars ($1,000,000.00) plus interest as provided by law, and the cost of this action.

## COUNT AGAINST METROPOLITAN LIFE INSURANCE COMPANY

15.     Plaintiffs incorporate the aforementioned paragraphs by reference hereto as fully set forth herein.

16.     For a number of years, Metropolitan provided insurance coverage for various manufacturers of asbestos-containing products.

17.     For a number of years, Dr. A.J. Lanza served as assistant medical director of Metropolitan.

18.     At all times relevant, the activities of Dr. Lanza hereinafter described were undertaken as a servant, agent or employee of Metropolitan.

      a.     Beginning in approximately 1934, Metropolitan Life Insurance Company and certain asbestos producers and manufacturers including Johns-Manville Corporation and Raybestos Manhattan, through their agents, Vandiver Brown, attorney J.C. Hobart, Sumner Simpson and J. Rohrbach, suggested to Dr. Anthony Lanza, as agent of Metropolitan Life Insurance Company, that Lanza publish a study on asbestos in which Lanza would affirmatively misrepresent material facts about asbestos exposure and concerning the

seriousness of the disease processes, asbestosis and related diseases. This was accomplished through intentional deletion of Lanza's feeling of asbestosis as "fatal" and through other selective editing that affirmatively misrepresented asbestos as causing diseases less serious than they really were known to be. As a result, Lanza's study was published in the medical literature in this misleading fashion in 1935. This fraudulent misrepresentation and fraudulent nondisclosure was motivated in part by a desire to influence proposed legislation to regulate asbestos exposure and to provide a defense in disputes involving Metropolitan as insurer.

b.      In 1936, American Brake Block Corporation, Asbestos Manufacturing Company, Gatke Corporation, Johns-Manville Corporation, Keasbey & Mattison Company, Raybestos-Manhattan, Russell Manufacturing, Union Asbestos and Rubber Company, and United Gypsum Company, entered into an agreement with the Saranac Laboratories. Under this agreement, these companies acquired the power to decide what information Saranac Laboratories could publish about asbestos disease and could also control in what form such publications were to occur. This agreement gave these companies power to affirmatively misrepresent the results of the work at Saranac, and also gave these conspirators power to suppress material facts included in any study. On numerous occasions thereafter, these companies together with Metropolitan, exercised their power to prevent Saranac scientists from disclosing material scientific data, resulting in numerous misstatements of fact being made at scientific meetings.

c.      On November 11, 1948, representatives of the following companies met at the headquarters of Johns-Manville Corporation: American Brake Block Division of American Brake and Shoe Foundry, Gatke Corporation, Keasbey & Mattison Company, Raybestos-Manhattan, Inc., Thermoid Company, Union Asbestos and Rubber Company, United States Gypsum Company and Metropolitan. U.S. Gypsum did not send a representative to the meeting, but instead authorized Vandiver Brown of Johns-Manville to represent its interest at the meeting and to take action on its behalf.

d.      At this November 11, 1948 meeting, these companies and Metropolitan decided to exert their influence to materially alter and misrepresent material facts about the substance of research previously started by Dr. Leroy Gardner at the Saranac Laboratories. Dr. Gardner's research involved the carcinogenicity of asbestos in mice and also included an evaluation of the health effects of asbestos on humans with a critical review of the then existing standards of dust exposure for asbestos and asbestos products

e.    At this meeting, these companies and Metropolitan and subsequently their agent, Dr. Vorwald, intentionally and affirmatively determined that Dr. Gardner's work should be edited to delete material facts about the cancer causing propensity of asbestos and the health effects of asbestos on humans and to delete the critique of the dust standards. This was published, as altered, in the scientific literature. These companies and Metropolitan thereby fraudulently misrepresented the risks of asbestos exposure to the public, in general, scientists, and persons exposed to asbestos such as the Decedent.

f.    As a direct result of the actions as described above, Dr. Gardner's edited work was published in the <u>Journal of Industrial Hygiene, AMA Archives of Industrial Hygiene and Occupational Health</u> in 1951 in a form that stressed those portions of Dr. Gardner's work that Metropolitan wished stressed, but which omitted references to human asbestosis and cancer, thereby fraudulently and affirmatively misrepresenting the extent of risks. Metropolitan and the companies it joined with affirmatively and deliberately disseminated this misleading publication.

g.    Such action constituted a material affirmative misrepresentation of material facts involving Dr. Gardner's work and resulted in creating an appearance that inhalation of asbestos was less of a health problem than Dr. Gardner's unedited work indicated.

h.    In 1955, Johns-Manville, for itself and on behalf of Metropolitan, through their agent Kenneth Smith, caused to be published in the <u>AMA Archives of Industrial Health,</u> an article entitled "Pulmonary Disability In Asbestos Workers". This published study materially altered the results of an earlier study in 1949 concerning the same set of workers. This alteration of Dr. Smith's study constituted a fraudulent and material representation about the extent of the risk associated with asbestos inhalation.

i.    In 1955, the National Cancer Institute held a meeting at which Johns-Manville, individually and as an agent for Metropolitan and A. Vorwald, as their- agent, affirmatively misrepresented that there were no existing animal studies concerning the relationship between asbestos exposure and cancer, when, in fact, Metropolitan was in secret possession of several studies which demonstrated that positive evidence did exist.

j.    Metropolitan approved and ratified and furthered the previous acts of Johns-Manville, Raybestos Manhattan, and A.J. Lanza.

19.     The acts of Metropolitan as described above, constitute a fraudulent concealment and/or a fraudulent misrepresentation which proximately caused injury to the Decedent in the following manner:

a.      Metropolitan intended the publication of false and misleading reports and/or the nondisclosure of documented reports of health hazards of asbestos, in order to:

i.      Maintain a favorable atmosphere for the continued sale and distribution of asbestos and asbestos-related products;

ii.     Assist in the continued pecuniary gain through the control and reduction of claims;

iii.    Influence proposed legislation to regulate asbestos exposure;

iv.     Provide a defense in lawsuits brought for injury resulting from asbestos disease.

b.      Metropolitan intended reliance upon the published reports regarding the safety of asbestos and asbestos-related products.

c.      Decedent suffered injury as a direct and proximate result of the acts alleged herein.

20.     Metropolitan has, as previously stated, altered, influenced, and created significant portions of medical literature which are false and misleading statements concerning the dangers of asbestos exposure and disease. In so doing, Metropolitan, and its aforesaid agents, provided a body of medical literature which, when relied upon by persons investigating such literature, would have lead to a false impression of the dangers of asbestos exposure.

21.     Additionally, the publication of such literature acted to inhibit the development of the literature and effectively delayed the dissemination of accurate knowledge of the dangers. Metropolitan owed a duty to the Decedent, and the public as a whole, when contributing to the

medical literature to do so in good faith and with the reasonable care expected of any professional contributing to such literature; Metropolitan's failure to do so is willful and wanton negligence and a separate intentional tort creating a duty to compensate the Decedent for injuries sustained as approximate contributing result of the actions of Metropolitan Life Insurance Company.

22.     As a direct and proximately result of the fraudulent concealment and/or fraudulent representation by Metropolitan and its agents, Decedent suffered the diseases, injuries and damages set forth in the foregoing paragraphs.

WHEREFORE, Plaintiffs prays that this Honorable Court enter judgment on her behalf against the defendants, both jointly and severally, in an amount of One Million Dollars ($1,000,000.00) plus interest as provided by law, and the cost of this action.

## AIDING AND ABETTING COUNT AGAINST
## METROPOLITAN LIFE INSURANCE COMPANY

23.     Plaintiffs incorporate the aforementioned paragraphs by reference hereto as fully set forth herein.

24.     Defendant, Metropolitan Life Insurance Company, individually and in concert with American Brake Block Corporation, Asbestos Manufacturing Company, Gatke Corporation, Johns-Manville Corporation, Keasbey & Mattison Company, Raybestos-Manhattan, Russell Manufacturing, Union Asbestos and Rubber Company, United Gypsum Company, Thermoid Company and others knowingly agreed and conspired among themselves to engage in a course of conduct that was reasonably likely to result in injury to Decedent.

25.     Defendant, Metropolitan Life Insurance Company, knew or should have known that the perversion of the scientific and medical literature as aforesaid would cause the harmful effects of asbestos exposure and would cause Decedent injury.

26.     Defendant, Metropolitan Life Insurance Company, gave substantial assistance and/or encouragement to the conspirators and this aided and abetted their sale of asbestos products in a defective and dangerous condition and their reduction and control of claims against them.

27.     The actions of Metropolitan Life Insurance Company make it liable to Decedent pursuant to Section 876 of the Restatement of Torts (Second) since Metropolitan Life Insurance Company has acted in concert with others to cause harm to the Decedent.

28.     As a direct and proximate result of the actions of defendant, Metropolitan Life Insurance Company, Decedent suffered serious bodily injury; endured great pain and suffering and mental anguish; incurred; was otherwise damaged; and ultimately succumbed to his disease, causing his death.

WHEREFORE, Plaintiffs pray that this Honorable Court enter judgment on her behalf against the Defendants, both jointly and severally, in an amount of One Million Dollars ($1,000,000.00) plus interest as provided by law, and the cost of this action.

## MISREPRESENTATION COUNT AGAINST
## METROPOLITAN LIFE INSURANCE COMPANY

29.     Plaintiffs incorporate the aforementioned paragraphs by reference hereto as fully set forth herein.

30.     The actions of defendant Metropolitan Life Insurance Company as described above constituted conscious misrepresentation involving risk of physical harm and/or negligent misrepresentation involving risk of physical harm.

31.     Metropolitan Life Insurance Company is liable to Plaintiffs for Decedent's injury pursuant to Section 310 and 311 of the Restatement of Torts (Second).

.       As a direct and proximate result of the actions of defendant, Metropolitan Life Insurance Company, Decedent suffered serious bodily injury and death; endured and incurred

medical expenses; lost earnings and earning capacity; and was otherwise damaged.

MAUNE RAICHLE HARTLEY
FRENCH & MUDD, LLC

BY: _____
JASON YAMPOLSKY, ESQUIRE
Attorney for Plaintiffs

## VERIFICATION

I, **RUTH F. HIMES,** hereby state:

1.      I am the Plaintiff in the foregoing action;

2.      I verify that the statements made in the foregoing CIVIL ACTION COMPLAINT are true and correct to the best of my knowledge, information and belief; and

3.      I understand that the statements in said CIVIL ACTION COMPLAINT are made subject to the penalties of 18 PA.C.S. 4904 relating to unsworn falsification to authorities.

*Ruth F. Himes*
**RUTH F. HIMES**

12|18|2019
Date

MAUNE RAICHLE HARTLEY
FRENCH & MUDD, LLC
By: Jason Yampolsky, Esquire
Identification No. 324961
230 S. Broad Street, Suite 1010
Philadelphia, PA 19102
(800) 358-5922

**Attorneys for Plaintiffs**

|  |  |
|---|---|
| **RUTH F. HIMES, Executor for the Estate of** **CARL L. REESER, deceased, and MARIAN L.** **REESER, his wife** 607 Christenson Road Deer Lodge, TN 37726 | COURT OF COMMON PLEAS PHILADELPHIA COUNTY DECEMBER TERM, 2019 |
| Plaintiffs, | NO. |
| vs. | |
| **A. DUIE PYLE, INC.**, *et al.* | ASBESTOS CASE |
| Defendants. | JURY TRIAL DEMANDED |

## NOTICE TO DEFEND

| NOTICE | AVISO |
|---|---|
| You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint of for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you. | Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de l fecha de la demanda y la notificacion. Hace falta ascentar un comparencia escrita o en persona o con un abogado entregar a la corte en forma escrita sus defensas o su objeciones a las demandas en contra de su persona. Se avisado que si usted no se defiende, la corte tomara medida y puede continuar la demanda en contra suya sin previo avis o notificacion. Ademas, la corte puede decidir a favor de demandante y requiere que usted cumpla con todas la provisiones de esta demanda. Usted puede perder dinero sus propiedades u otros derechos importantes para usted. |
| *You should take this paper to your lawyer at once. If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help.* | *Lleve esta demanda a un abogado inmediatamente. Si no tien abogado o si no tiene el dinero suficiente de pagar tal servici Vaya en persona o llame por telefono a la oficina cuy direccion se encuentra escrita abajo para averiguar donde s puede conseguir asistencia legal.* |
| **Philadelphia Bar Association** **Lawyer Referral** **and Information Service** **One Reading Center** **Philadelphia, Pennsylvania 19107** **(215) 238-6333** **TTY (215) 451-6197** | **Asociacion De Licenciados** **De Filadelfia** **Servicio De Referencia E** **Informacion Legal** **One Reading Center** **Filadelfia, Pennsylvania 19107** **(215) 238-6333** **TTY (215) 451-6197** |

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RUTH F. HIMES, Executor for the Estate of
CARL L. REESER, Deceased, and MARIAN L.
REESER, his wife,

Plaintiffs,

vs.

VIAD CORP, Improperly Pleaded as Viad Corp.,
f/k/a The Dial Corp., as successor-in-interest to
Griscom-Russell Company, et al.,

Defendants.

COURT OF COMMON PLEAS
PHILADELPHIA COUNTY
CIVIL DIVISION

DECEMBER TERM, 2019
NO. 3279

ASBESTOS LITIGATION

## DECLARATION OF DR. CHARLES R. CUSHING, Ph.D., P.E.

I, Charles R. Cushing, Ph.D., P.E., under penalty of perjury and of my own personal knowledge, state the following:

1.    I am the president of C.R. Cushing & Co, Inc., Naval Architects, Marine Engineers and Transportation Consultants.  Attached as Exhibit 1 is a true and correct copy of my curriculum vitae.  I respectfully submit this Declaration in support of any assertion that Viad Corp ("Viad") has been sued in its capacity as a person acting under an officer or agency of the United States within the meaning of 28 U.S.C. § 1442(a)(1).  This Declaration is based upon my experience, education, and training as a naval architect and marine engineer, which includes my involvement in the design, construction, and/or conversion of more than 250 ocean–going vessels.  This includes knowledge and familiarity with the contracting practices and requirements utilized by the U.S. Navy in constructing these vessels and as applied to its suppliers and contractors.

{PH505157.1}

2.      Plaintiffs allege in this case that Viad is the successor-in-interest to Griscom-Russell Co. ("Griscom-Russell"). Plaintiffs further allege that Mr. Reeser was exposed to asbestos while serving in the U.S. Navy from 1956 to 1959 as a machinist mate.

3.      Griscom-Russell is a defunct company that manufactured evaporators placed on some U.S. Navy vessels in the 1940s and 1950s.

4.      The United States Navy was intimately involved in the manufacture of any Griscom-Russell equipment used on U.S. Navy vessels, as the equipment manufactured for those vessels was designed and built to meet precise and exacting specifications of the U.S. Navy. Moreover, pursuant to the U.S. Navy's specifications, Griscom-Russell would not have been able to affix to its products any type of warning or cautionary statements concerning alleged health hazards from the installation, use, or maintenance of the products. Whether certain equipment used aboard U.S. naval vessels should have warnings, and the content and format of any such warnings, was determined solely by the U.S. Navy. Griscom-Russell would have had no discretion whatsoever to affix any warnings of its own to products it delivered to the U.S. Navy.

5.      The U.S. Navy participated intimately in the preparation of any instructional manuals for machinery aboard ships, including Griscom-Russell equipment. Griscom-Russell would have been required to follow any specifications for such informational manuals and would have had no discretion to deviate from such specifications.

6.      The Griscom-Russell equipment manufactured for use on U.S. Navy vessels would have been manufactured without any insulation and shipped to the shipyards without insulation. The equipment would have been totally insulated at the shipyard, or after installation on the vessels, by others using insulation purchased from others. The U.S. Navy specified,

designed, and approved very precise specifications governing how the shipyard should insulate the equipment and the type of materials the shipyard should use to insulate the equipment.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 27 day of January, 2020

CHARLES R. CUSHING

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE



IN RE: ASBESTOS LITIGATION:       )
                                  )
ODILIA KISER,                     )
As Personal Prepresentative of the Estate of  )
DONALD GENE KISER                 )
            Plaintiff,            )
                                  )       C.A. No.
    v.                            )
                                  )   (Superior Court of the State of Delaware,
VIAD CORP. f/k/a THE DIAL         )   New Castle County,
CORPORATION (sued individually and as  )     C.A. No. N09C-10-261 ASB)
successor-in-interest to GRISCOM- )
RUSSELL COMPANY                   )
                                  )
            Defendants.           )
                                  )

I, Ben J. Lehman, under penalty of perjury and of my own personal knowledge, state the

following:

1.      I am a retired Rear Admiral of the United States Navy.  Before joining the Navy

in 1942, I received a Bachelor of Mechanical Engineering degree from the College of the City of

New York.  After joining the Navy, I was ordered to study naval architecture and marine

engineering at Massachusetts Institute of Technology (MIT).  Later, I completed the United

States Post-Graduate School program in Naval Engineering Design at the Naval Academy in

Annapolis.  The curriculum was primarily in electrical and mechanical engineering.  I received a

Master of Science in Mechanical Engineering from Harvard University in 1949.  I have also

studied Design Philosophy and Advanced Stress Analysis at Stanford University.

I joined the United States Navy in 1942 and remained on active duty until 1946.  While

on active duty in the United States Navy, I served as Ship Superintendent and Dry Docking

Officer at the Brooklyn Navy Yard between 1942 and 1944.

In 1946, I left active duty and joined the Naval Reserve.  In 1950, I returned to active

{DE145847.1}

duty and was assigned as a Ship Superintendent at the San Francisco Naval Shipyard from 1950 to 1952. I was then transferred to the Assistant Industrial Manager Office in San Francisco from 1952 to 1954 as a Planning Officer.

In 1954, I returned to the Naval Reserve where I was a member and then Commanding Officer of Naval Reserve Engineering Companies.

I was promoted to Rear Admiral in 1977 in the Naval Reserve.

I worked as an engineer at General Electric Company between 1946 and 1948. I held the positions of Director of Engineering and Vice-President of Engineering at two major ship building companies between 1969 and 1975. During all these periods, I have maintained close contact with the U.S. Navy, including periods of active duty in the Department of Defense and the Naval Sea Systems Command in Washington, D.C. I have been an independent consultant since 1975 providing engineering consultation services to various industries including the shipbuilding industry. During my Naval service, I have personally been responsible for the creation of Navy specifications for the procurement of materials and machinery for use on Navy ships. A true, complete and accurate copy of my curriculum vitae is attached as Exhibit 1.

2.      Based on my experience, professional training and education, I am familiar with the plans, designs and specifications used in the construction and repair of commercial and Navy ships. In addition, I am familiar with Navy specifications, equipment manuals and qualified products lists which are used in the construction and repair of Navy and commercial ships. I am also familiar with the Navy regulations regarding the use, placement and repairs or maintenance of asbestos products generally during the periods in which they were used and the Navy regulations regarding such maintenance, technical manuals and warnings permitted by the Navy.

3.      I submit this Declaration to attest to the level of supervision and control by the

{DB145847.1}

United States Navy and its officers over every aspect of the design, manufacture and use of equipment intended for installation on Navy vessels.

4. During my service in the Navy as a Ship Superintendent, I was personally involved with the supervision or oversight of ship alterations and equipment overhauls at the New York Naval Shipyard (formerly the Brooklyn Navy Yard) and at the San Francisco Naval Shipyard (Hunter's Point).

5. During the 1940s and 1950s, the Navy generally utilized a system of ship design and construction that established and set the designs of ships, which designs were known to the Navy to meet particular performance capabilities. The Navy then restricted any deviations from such designs by any suppliers and/or contractors. When a change in the design and/or construction of a ship was required, the Navy would oversee, control and approve all aspects of the change. Design drawings were prepared by the design agent for the Navy or by the Navy itself. The Navy reviewed and approved the drawings and then submitted them to the individual suppliers and contractors to use in the manufacturing, supply and/or installation of the equipment and the construction of the ship. These pertained to the original designs, as well as changes initiated and controlled by the Navy.

6. I have reviewed various documents submitted by Buffalo Pumps in connection with its removal and related briefing in *O'Connell v. Foster Wheeler Energy Corp.*, 544 F. Supp. 2d 51 (D. Mass. 2008). As an aid to the Court, I submit herewith as Exhibit 2 an affidavit of Navy Rear Admiral David Sargent, Jr., and also the documents attached as Exhibit L to the Sargent affidavit; and I submit herewith as Exhibit 3 an affidavit of Buffalo Pumps' production manager Martin Kraft, and also the documents attached as Exhibit C to the Kraft affidavit. I have read both affidavits, including these exhibits, and am familiar with their content. Based

{DE145847.1}

upon my personal experience, these documents attached to both affidavits are typical of the Navy's detailed attention to and control over the content of submissions, and the type of correspondence that the Navy used to reject submissions of, and to require corrections and resubmissions by, its various contractors.  In my experience, such preliminary drafts and responsive comments were more typically discarded than retained, which may serve to explain why more such documents have not turned up.

7.    Any deviation from military specifications of equipment to be installed on ships would have resulted in significant problems and probable rejection of the equipment.  The Navy could not, and did not, permit its contractors to implement any changes because every aspect of every item of equipment had to be:  (1) functionally compatible with every other item of equipment and with available materials from the Navy Supply System; (2) compatible with shipyard practices, training, tools and capabilities; and (3) consistent with the ability of the crew in maintaining the ship during its service using materials carried on board when shipyard help was not available.

8.    In the 1940s, 1950s and afterward, the Navy had complete control over every aspect of each piece of equipment.  Military specifications governed every characteristic of the equipment used on Navy ships, including the instructions and warnings.  Drawings for nameplates, texts of instruction manuals, and every other document relating to construction, maintenance, and operation of the vessel were approved by the Navy.  This control included the decision of what warnings should or should not be included.  Thus, the Navy controlled the decision making with respect to instructions and warnings on every piece of equipment.

9.    The Navy had specifications as to the nature and content of all written material that was delivered with each piece of equipment.  The Navy was intimately involved with and

{DE145847.1}

had final approval of all technical and engineering drawings, operating manuals, safety or hazard information and any other written information that accompanied a piece of equipment. The Navy determined the nature of hazards to be subject to any precautionary labeling and the content of any such labeling. In short, the Navy dictated every aspect of the design, manufacture, installation, overhaul, written documentation and warnings associated with its ships and did not permit deviation by any of its contractors.

10.    The Navy specified the use and placement of insulation, including asbestos insulation, on Navy ships during World War II and the 1950s. Mechanical equipment for use aboard Navy ships was delivered without insulation. This was to prevent damage to the insulation during shipment and installation, and to allow the equipment to be effectively connected to other equipment and systems on board, which connections as well as the equipment could then be effectively insulated. If mechanical equipment was to be insulated, it was not insulated by the manufacturers, but rather by shipyard personnel.

Shipyards and shipyard personnel were solely responsible for installing and insulating the equipment. Insulation was installed in accordance with plans, specifications, and schedules developed for and controlled by the Navy. Based upon my experience, professional training, education and research, it is my opinion that the United States Navy was aware of the dangers of asbestos by the 1940s. Despite such knowledge, the Navy did not provide any warnings. The research by LCdr S. A. Forman, MC, U.S. Navy [Par. 13g, below] supports my opinion.

11.    Based upon my experience, professional training, education and research, it is my opinion that equipment suppliers were prohibited from providing any warnings to be placed on or to accompany equipment supplied to the Navy without the consent and approval of the Navy. Moreover, certain types of warnings would not have been approved by the Navy given the

necessary performance needs and capabilities of the shipboard equipment, the ships and Navy personnel. This would have included, but not been limited to, any potential warnings associated with asbestos including, but not limited to, recommendations regarding respiratory protection, and repair and maintenance practices. This was due to the inability to effectively and comprehensively observe, implement, and comply with such recommendations under the multitude of varying conditions likely to be encountered by Navy ships at sea, and especially at war. All equipment and procedures had to be standardized to ensure that personnel were familiar with the procedures for operating, repairing and maintaining the equipment, and that the tools and equipment aboard ship or at ports world-wide were available to perform such procedures. Thus, a contractor or supplier could not provide warnings or recommendations without the consent and authorization of the Navy.

12.     During the 1940s and early 1950s, the Navy did not have the tools, equipment and/or personnel capabilities to meet or comply with any potential warnings or recommendations pertaining to the health hazards of asbestos aboard ship, especially under the exigencies of war. Further, the Navy limited the areas of interest of each manufacturer to the equipment supplied by that manufacturer. Because equipment was required by the Navy to be supplied without insulation, it would have been improper and unauthorized for the manufacturer or supplier of such equipment to supply warnings or other recommendations with respect to insulation, which would not have been within its particular area of interest. As the manufacturer and/or supplier would not have been responsible for the insulation, it likely would not have been aware of any hazard associated with such insulation or required to determine whether any existed, and thus it had no ability or obligation to supply warnings about insulation. As the Navy would have been the entity that required the insulation, designated the type and placement of the insulation, and

{DB145847.1}

directed a different entity to supply, install it, or both e.g., the shipyard, the Navy's knowledge of any potential hazards associated with the insulation would have been equal or superior to that of the equipment manufacturers and suppliers that provided the un-insulated equipment.

13.    Based upon my review of many documents regarding the Navy's hazard communication program, my career experience in the Navy, and personal knowledge of the Navy's hazard communication program and naval practices generally, I can state as follows:

a.    Uniformity and standardization of any communication, and in particular safety information, are crucial to the operation of the Navy.  The Navy could simply not operate if various personnel were trained differently and received additional inconsistent information from different manufacturers.

b.    Asbestos insulation products began containing hazard warning labels from the insulation manufacturers in the mid-1960s.  Prior to that time, beginning more than two decades earlier, the Navy's own occupational health program provided training, engineering and administrative controls, personal protective equipment, and medical surveillance to prevent the hazards of asbestos to shipyard workers.

c.    Any additional warning about the hazards of asbestos by an equipment manufacturer would be only partial in scope as well as inherently redundant, eventually obsolete, and almost certainly inconsistent with the Navy's own training.  The Navy could not permit unauthorized hazard labels which might interfere with the abilities of sailors to perform their duties in the heat of battle.

d.    At most, it is possible that manufacturers of equipment delivered to the Navy without insulation could merely have told personnel to follow the

{DE145847.1}

Navy's own mandates for handling asbestos. This redundant information is not informative, diverts attention from hazards inherent in the equipment, and would certainly become obsolete. Equipment aboard Navy vessels last many years and the Navy's asbestos hazard communication program evolved over the years to keep pace with scientific developments and changes in materials.

e.      If each equipment manufacturer (and conceivably even the pipe and structural steel manufacturers) provided its own warning about asbestos insulation that might be used on or around its product, inconsistent warnings would certainly have resulted. Many other hazardous substances (for example boiler feed water chemicals, fuels, solvents, heavy metals) are used in conjunction with the multitudes of equipment on a ship. If each was to warn about all the possible substances that might be used on or around its equipment, sailors would quickly become inundated with inconsistent information on myriad substances.

f.      Some types of insulation used by the Navy on equipment were non-asbestos (e.g., fiberglass blankets) and any general warning about asbestos on such equipment would simply be wrong. In fact, asbestos was designated as a "critical material" by the Army and Navy Munitions Board on or about January 30, 1940. See Exhibit 4. The Navy directed that substitutes for asbestos, including fiberglass, cotton duck lagging and hair felt, should be used where possible, including on low temperature pieces of equipment in order to conserve available asbestos. See Exhibit 5.

g.      Based on my experience, the United States Navy, as the biggest user of asbestos in World War II, and thereafter in shipbuilding, was more

{DE145847.1}

knowledgeable about any hazard of asbestos than any of the vendors who supplied it and upon whom plaintiff seeks to impose a duty not consistent with or imposed by the above naval specification. In Par. 10, I mentioned the extent of the Navy's knowledge with regard to asbestos. As an aid to the Court, I submit herewith as Exhibit 6 an affidavit of Samuel A. Forman, M.D., with attached exhibits, with which I am thoroughly familiar from various other litigations involving the U.S. Navy. Dr. Forman compiled the documents attached to his affidavit while detailed by the Navy and under Navy orders to perform an investigation into the state of Naval hygiene and asbestos. I agree with the conclusion of Dr. Forman that the state of knowledge of the United States Navy regarding hazards of asbestos was quite complete when compared to available knowledge at the time of World War II, and that by 1940, the United States Navy was a leader in the field of occupational medicine relating to, among other things, asbestos exposure. I myself, was exposed to asbestos in inspecting the work of insulating shops under my supervision during my tenure at the Brooklyn Navy Yard and also in San Francisco. Accordingly, my interest in the Navy's knowledge in this field was both personal and professional, and continuing to this day.

I have reviewed all of the exhibits attached to the affidavit of Dr. Forman including the article attached as Exhibit C thereto, as well as the documents listed above in sub-paragraph (f), which I saw in the course of my duties as a naval officer, as either official United States Navy Documents or articles reproduced from recognized and reputable magazines and reviews of the kind relied upon by experts.

{DE145847.1}

14.     Based on my experience, the United States Navy is bound by its own regulations and would not permit any vendor gratuitously to do anything not provided for in its own regulations.  The Navy would not allow any warnings to be placed on any product without specific authority by way of an order or a regulation.

Therefore, I conclude:

The information possessed by the Navy with respect to the specification and use of asbestos, and the health hazards associated with its use aboard Navy vessels, represented the state-of-the-art and far exceeded any information that possibly could have been provided by manufacturers of Naval equipment.  Based upon the knowledge at a given period in time, the Navy was fully aware of the recognized health hazards of asbestos and had a robust program to control exposure of personnel and monitor their health.

There was no information concerning any asbestos hazard or danger posed by any asbestos-containing product applied to any equipment on a United States Navy ship known to a manufacturer of equipment that was not previously known to the United States and the United States Navy.

It would be unreasonable to assume that the Navy would have accepted gratuitous comments from equipment manufacturers about hazards associated with a product they neither made nor sold and about which the Navy was already aware.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 19th day of November, 2009.

Ben J. Lehman, Rear Admiral (USN, Ret.)

# EXHIBIT D



1 of 1 DOCUMENT

⚠
Caution
As of: Jan 15, 2016

**ROBERT REASER, et al., Plaintiffs, v. ALLIS CHAMBERS CORPORATION, et al., Defendants.**

CV 08-1296-SVW (SSx)

**UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA**

*2008 U.S. Dist. LEXIS 112344*

June 23, 2008, Decided
June 23, 2008, Filed

**COUNSEL:** [*1] For Robert Reaser, Christine Reaser, Plaintiffs: Brian P Barrow, Ethan A Horn, Jennifer L Bartlett, Ronald Cary Eddins, LEAD ATTORNEYS, Simon Eddins and Greenstone, Long Beach, CA.

For CLA-VAL Co., Defendant: Julia A Gowin, LEAD ATTORNEY, Hawkins, Parnell & Thackston LLP, Los Angeles, CA.

For Foster Wheeler Energy Corporation, Defendant: Thomas J Moses, LEAD ATTORNEY, Brydon Hugo and Parker, San Francisco, CA.

For General Electric Company, Defendant: Katherine Paige Gardiner, LEAD ATTORNEY, Sedgwick Detert Moran and Arnold, San Francisco, CA.

For Viad Corporation, sued indiviually, Successor Griscom-Russell Company, formerly known as The Dial Corporation, Defendant: Keith M Ameele, Peter B Langbord, LEAD ATTORNEYS, Foley and Mansfield, Pasadena, CA.

**JUDGES:** STEPHEN V. WILSON, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** STEPHEN V. WILSON

**OPINION**

ORDER DENYING PLAINTIFFS' MOTION FOR REMAND [18]

**I. Statement of Facts**

Plaintiffs Robert and Christine Reaser brought this action against General Electric Company ("GE"), Viad Corporation ("Viad") [1], and other Defendants in Los Angeles Superior Court on January 25, 2008. (Motion for Remand, at 1 ("Motion").) Plaintiffs allege that Robert Reaser ("Reaser") developed malignant mesothelioma [*2] as a result of exposure from Defendants' asbestos or asbestos-containing products aboard United States naval ships. (Complaint, at P 3 ("Complaint").) Reaser served in the U.S. Navy from 1951 to 1964, during which he was allegedly exposed to asbestos while working on the *U.S.S Shea, U.S.S. Boston, U.S.S. Providence,* and the *U.S.S. Wilkinson.* (Defendant Viad Notice of Removal, at 3.) Plaintiffs allege that Defendants violated their state law duties to warn Reaser about the dangers of asbestos exposure from equipment found on naval vessels. (Motion, at 1.) Viad, later joined by GE, removed the case to federal court based on the federal officer removal statute, which provides federal jurisdiction over claims against "any officer (or any person acting under that officer) of the United States or of any agency thereof . . . for any act

2008 U.S. Dist. LEXIS 112344, *

under color of such office . . ." *28 U.S.C. § 1442(a)(1).* This statute does not require all Defendants to consent to removal. See *Durham v. Lockheed Martin Corp.,* 445 F.3d 1247, 1253 (9th Cir. 2006) ("Whereas all defendants must consent to removal under *section 1441* . . . a federal office or agency defendant can unilaterally remove a case under *section 1442.*")

.l   Defendants [*3] Viad and GE were the only defendants who removed the case and filed oppositions to the Motion for Remand.

Plaintiffs, clearly anticipating that one or more Defendants would attempt to remove the case to federal court, included a disclaimer in the Complaint which attempts to waive any cause of action arising from exposure to asbestos dust that occurred in a federal enclave, expressly excluding from the disclaimer U.S. Navy vessels. Plaintiffs also disclaim any cause of action resulting from exposure to asbestos dust caused by any acts or omissions of Defendants committed at the direction of a U.S. officer. (Complaint, at P 4.) On April 14, 2008, Plaintiffs filed a motion for remand to state court on the ground that this Court lacks subject matter jurisdiction. (Motion, at 2.)

## II. Analysis

Three main issues must be addressed in examining Plaintiffs' Motion. The first is whether the standard of review includes a requirement that Defendants meet a "special burden" in showing that federal officer jurisdiction is proper. The second is whether Defendants meet the elements of federal officer jurisdiction. The third is whether Plaintiffs' disclaimer should be determinative as to the question of [*4] remand.

## A. Standard of Review

A party seeking removal under *§ 1442(a)(1)* must demonstrate that (a) it is a person within the meaning of the statute; (b) it can assert a "colorable federal defense"; and (c) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and the plaintiff's claims. *Durham,* 445 F.3d at 1251. Defendants Viad and GE assert that they must prove only by a preponderance of the evidence that removal to federal court is proper, as typically required. (See Defendant Viad Opposition Motion, at 3.)

Plaintiffs argue, however, that Defendants have a "special burden" in showing that federal officer jurisdiction is proper. (Motion, at 3.) Plaintiffs assert that the special burden requires Defendants to present concrete, verifiable evidence regarding satisfaction of federal officer jurisdiction, particularly with respect to satisfying the existence of a colorable federal defense. This burden

would create a higher standard for Defendants at this stage of the litigation process. Citing to *Williams v. General Electric Co.,* Plaintiffs allege that because *§ 1442(a)(1)* is "predicated on the protection of federal activity and an anachronistic mistrust [*5] of state courts' ability to protect and enforce federal interests and immunities from suit, private actors seeking to benefit from its provisions bear a special burden in establishing the official nature of their activities." (Motion, at 3) (quoting *Williams v. General Electric Co.,* 418 F. Supp. 2d 610, 614 (M.D. PA. 2005)). Furthermore, Plaintiffs rely on Hilbert v. McDonnell Douglas Corp. in arguing for a heightened burden in satisfying the three prongs of *§ 1442(a)(1).* 529 F. Supp. 2d 187 (D. Mass. 2008). In Hilbert, the defendants claimed that the military, through its contracts, exercised its discretion in such a way as to prevent them from warning the plaintiff about the dangers of asbestos, similar to the present assertions by Viad and GE. *Id. at 199.* The court required that the defendants submit actual citations to regulations or contracts evidencing the government's alleged control over asbestos warnings. Because the defendants did not produce such evidence, the court held that this "sort of speculation is not remotely adequate" to satisfy federal officer jurisdiction and remanded the case. *Id. at 202-203.*

The Ninth Circuit, however, has rejected the notion that defendants [*6] must meet a special burden in order to satisfy the three prongs of federal officer jurisdiction. In Durham, the Ninth Circuit noted that, while removal under *§ 1441* is to be strictly construed, the federal officer removal statute is to receive a generous interpretation. According to the Ninth Circuit, "the Supreme Court has held that the right of removal is absolute for conduct performed under color of federal office, and has insisted that the policy favoring removal should not be frustrated by a narrow, grudging interpretation of *§ 1442(a)(1).*" *Durham,* 445 F.3d at 1252 (citing *Arizona v. Manypenny,* 451 U.S. 232, 242, 101 S. Ct. 1657, 68 L. Ed. 2d 58 (1981)). Therefore, when federal officers and their agents are seeking a federal forum, the Court is to interpret *§ 1442* broadly in favor of removal. Id. In following the Supreme Court's broad interpretation of *§ 1442* and rejecting the need for a special burden, the Ninth Circuit has maintained that Defendants must simply make an adequate showing that the requirements of federal office jurisdiction are met to support removal to federal court. *Id. at 1252-1253.* Therefore, to qualify for removal, Defendants must be a person under the statute, raise a colorable federal defense, [*7] and present a basis for a causal connection between the charged conduct and the asserted government authority. *Willingham v. Morgan,* 395 U.S. 402, 409, 89 S. Ct. 1813, 23 L. Ed. 2d 396 (1969) (citing Maryland v. Soper (No. 1), 270 U.S. 9, 33, 46 S. Ct. 185, 70 L. Ed. 449 (1926)). Defend-

ants need not prove their federal defense or a causal nexus to justify removal.

## B. Three Prongs of Removal under § 1442(a)(1)

### 1. Person

As corporations, Defendants Viad and GE meet the preliminary requirement that the party seeking removal is a person within the meaning of § 1442(a)(1). See *Fung v. Abex Corp., 816 F. Supp. 569, 572 (N.D. Cal. 1992).* There is no dispute between the parties as to this prong.

### 2. Colorable Federal Defense

Defendants seek removal under the government or military contractor defense, which protects a government contractor from liability for acts done by him while complying with government specifications during execution of performance under a contract with the United States. *McKay v. Rockwell Intern. Corp., 704 F.2d 444, 448 (9th Cir. 1983).* The Supreme Court recognized the contractor defense in Boyle v. United Technologies Corp., where it held that liability for design defects in military equipment could not be imposed on a private government [*8] contractor under state law where: (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier, but not to the United States. *Boyle v. United Technologies Corp., 487 U.S. 500, 512, 108 S. Ct. 2510, 101 L. Ed. 2d 442 (1988).* This defense has been extended to failure to warn cases; however, it is inapplicable in the absence of evidence that the defendants' decision to not provide a warning was "in compliance with reasonably precise specifications imposed on it by the United States." *Butler v. Ingalls Shipbuilding, Inc., 89 F.3d 582, 586 (9th Cir. 1996).* Where there is no conflict between requirements imposed under a federal contract and a state law duty to warn, the Court should defer to state law. Id.

### a. Reasonably Precise Specifications

To illustrate that reasonably precise specifications set forth by the Navy exist and that these specifications conflict with the state law duty to warn, Defendants rely on the declarations of Dr. Cushing and Admiral Lehman. Dr. Cushing, President of C.R. Cushing & co., Inc., Naval Architects, Marine Engineers [*9] and Transportation Consultants, notes that the U.S. government was intimately involved in the manufacture of any contractors' equipment used in U.S. vessels, "as the equipment manufactured for those vessels was designed and built to meet precise and exacting specifications of the U.S. Navy." (Cushing Decl., at 4.) Furthermore, Dr. Cushing asserts that "[w]hether certain equipment used aboard U.S.

Naval vessels should have warnings, and the content and format of any such warning, was determined solely by the U.S. Navy." (Id. at 5.) Admiral Lehman, a retired Rear Admiral of the U.S. Navy, states that "equipment suppliers were prohibited from providing any warnings on or to accompany equipment supplied to the Navy without the consent and approval of the Navy." (Lehman Decl., at 5.) Moreover, Admiral Lehman claims that certain types of warnings were simply not approved by the Navy, such as any warnings associated with hazards from asbestos. (Id.) Plaintiffs argue that these declarations do not refer to actual contracts or any personal knowledge of contractual obligations owed by Defendants, but rather are mere speculations about what the Navy would have permitted. (Plaintiffs' Reply, at [*10] 6.) Essentially, Plaintiffs assert that Defendants have not adequately shown that the Navy set forth reasonably precise specifications, such that Defendants fail to raise a colorable federal defense. [1]

> 2   Plaintiffs further argue that Admiral Lehman and Dr. Cushing lack personal knowledge and that their declarations lack foundation and are speculative. These arguments lack merit because Admiral Lehman and Dr. Cushing's declarations are based on years of experience and training in regard to the design and operation of U.S. Navy vessels. Both declarants state that they are personally familiar with the degree of supervision and control of the Navy over the actions of its contractors. The declarations describe typical Navy specifications and offer explanations as to why warnings about asbestos would not have been permitted. (See Lehman Dec., at 2-3; Cushing Dec., at 2, 5.) Additionally, Plaintiffs claim the declarations are inadmissible per the "best evidence rule." *Fed. R. Evid. 1002.* This argument also lacks merit because Admiral Lehman and Dr. Cushing are not trying to "prove the content of a writing," but rather they are relying on their independent knowledge and familiarity regarding [*11] Navy specifications in making their assertions. Id.

Plaintiffs' argument relates to their assertion that Defendants must prove their case in order to satisfy the three prongs for removal under § 1442. (Motion, at 3.) Because the Supreme Court and the Ninth Circuit has declined to require that any such burden be placed on defendants in federal officer removal cases, the argument that actual contracts are required to illustrate reasonably precise specifications at this stage of the litigation process necessarily fails. See *Willingham, 395 U.S. at 407* (noting that to be colorable, the defense does not need to be clearly sustainable, as the purpose of § 1442 is to secure that the validity of the defense will be tried in feder-

2008 U.S. Dist. LEXIS 112344, *

al court). Defendants need not establish the validity of their federal defense in order to justify removal. Rather, they must only raise a colorable federal defense. The declarations made by Admiral Lehman and Dr. Cushing describe general naval policies and shipbuilding practices, and illustrate the lack of discretion given to government contractors in supplying equipment to naval vessels. As Plaintiffs point out, the declarations do not reference any specific contractual [*12] provisions that prohibit Defendants from placing warnings on naval equipment about the dangers of asbestos exposure. The absence of specific prohibitions, however, does not render those declarations useless; rather, the declarations provide Defendants with a basis for asserting a colorable federal defense, which is all that is needed at the removal stage. A central district court similarly determined that Admiral Lehman's declaration created an inference that military contractors did not provide a warning concerning the dangers of asbestos because the Navy did not permit any such warning. *Oberstar v. CBS Corp., No. CV 08-118 PA, 2008 U.S. Dist. LEXIS 14023, *12 (C.D. Cal. Feb. 11, 2008)* (citing *Nesbiet v. General Electric Co., 399 F. Supp. 2d 205, 208 (S.D.N.Y. 2005))*. Once again, the court noted that defendants must only show a colorable federal defense at this stage of the litigation process, not one that will ultimately prevail. Id. Additionally, a Northern District of California court has specifically rejected the argument that a defendant must produce actual contractual documentation in order to demonstrate that it worked under reasonably precise specifications. See *Ballenger v. Agco Corp., 2007 U.S. Dist. LEXIS 47042, 2007 WL 1813821, at *3 (N.D. Cal. June 22, 2007)* [*13] (stating that to require past contracts would frustrate the purpose of § 1442). In this action, based on the declarations of Admiral Lehman and Dr. Cushing, it is possible to find that the Navy set forth reasonably precise specifications regarding the use of warnings, such that Defendants have a basis for asserting a colorable federal defense.

**b. Conformity to Reasonably Precise Specifications**

As to the second element of the government contractor defense, Defendants must show that the products supplied to the U.S. Navy conformed to the reasonably precise specifications set forth by the Navy. Essentially, Defendants must show that the Navy received what it sought. Based on the declarations by Admiral Lehman and Dr. Cushing, it can be inferred that any deviation from the Navy's specifications would have resulted in rejection of the equipment. (See Cushing Dec., at 4-5; Lehman Dec., at 4.) Thus, if Plaintiff Reaser had been exposed to asbestos on naval vessels where Defendants had supplied asbestos-containing equipment, it is likely that this equipment conformed to the detailed specifica-

tions set forth by the Navy. Had this equipment not complied with the Navy's specifications regarding [*14] design, installation, and warnings, it is a fair inference that the equipment would not have been placed on the ships. (Lehman Dec., at 4-5.)

**c. Warnings by Defendants**

Finally, the third element of the military contractor defense requires that Defendants did not fail to warn the Navy of any dangers associated with asbestos that were known by Defendants but not the government. As the Supreme Court in Boyle noted, "[t]he third condition is necessary because, in its absence, the displacement of state tort law would create some incentive for the manufacturer to withhold knowledge of risks, since conveying that knowledge might disrupt the contract but withholding it would produce no liability." *Boyle, 487 U.S. at 512*. Dr. Lawrence Betts, a retired Navy captain, states in his declaration that the Navy's knowledge regarding the dangers of asbestos and its health effects represented the state of the art. (Betts Dec., at 18.) Furthermore, he notes that "[d]uring the period from the early 1920s to the late 1960s, there was nothing about the hazards associated with the use of asbestos-containing products . . . on United States Navy ships known by a manufacturer . . . that was not known by the United [*15] States and the United States Navy." (Id.) Based on this evidence, it seems possible to find that the information possessed by the Navy exceeded any information that could have been provided by Defendants, such that the third element is sufficiently satisfied for raising a defense. Therefore, it appears that Defendants have raised a colorable federal defense.

**3. Causal Nexus**

The final prong necessary to satisfy federal officer removal requires Defendants to demonstrate that the Navy controlled the warnings Defendants could place on its equipment and that this control prevented Defendants from fulfilling its alleged state law duty to warn of the dangers associated with asbestos exposure. Essentially, there must be a causal nexus between the claims against Defendants and the acts they performed under color of federal office. *Ballenger, 2007 U.S. Dist. LEXIS 47042, 2007 WL 1813821at *3-4*. Similar to the second prong, Defendants must simply show the existence of a likely causal connection, not prove such a connection. See *Jefferson County v. Acker, 527 U.S. 423, 432, 119 S. Ct. 2069, 144 L. Ed. 2d 408 (1999)* ("Just as requiring a clearly sustainable defense rather than a colorable defense would defeat the purpose of the removal statute . . . so would demanding [*16] an airtight case on the merits in order to show the required causal connection.") Again, as shown above by the declarations of Lehman, Cushing, and Betts, the Navy had direct control over all

aspects of the equipment supplied to its ships. It can therefore be inferred that the reason why Defendants did not place warnings on their equipment was because such warnings were precluded by the Navy's detailed specifications. (See Lehman Dec., at 4.) Plaintiffs allege that Defendants failed to warn of asbestos dangers, yet this alleged failure to warn, Defendants assert, resulted from the Navy's prohibitions and/or control over any such warning. Therefore, Defendants adequately show a causal nexus between Plaintiffs' claims and Defendants' actions.

Because Defendants have adequately asserted a colorable federal defense and a causal nexus between Plaintiffs' claims and Defendants' acts performed under the direction of the Navy, it appears that Defendants satisfy the three prongs of § 1442(a)(1).

## C. Disclaimer

Plaintiffs additionally argue that removal is improper because of disclaimers appearing in the Complaint. Plaintiffs include two disclaimers in the Complaint. The first disclaimer does not [*17] operate to disclaim any cause of action subject to federal officer removal. (Complaint, at P 4.) The second disclaimer, however, specifically disclaims "any cause of action or recovery for any injuries resulting from exposure to asbestos dust caused by any acts or omissions of a party Defendant committed at the direction of an officer of the United States Government." (Id.) However, because removal pursuant to the federal officer removal statute is premised on the existence of a colorable federal defense, rather than the manner in which a plaintiff's complaint is constructed, courts have found that neither a plaintiff's disclaimer nor its characterization of his claims is determinative. See Oberstar, No. CV 08-118 PA, 2008 U.S. Dist. LEXIS 14023 at *8. See also Durham, 445 F.3d at 1253 ("[R]emovals under section 1441 are subject to the well-pleaded complaint rule, while those under section 1442 are not."); Ballenger, 2007 U.S. Dist. LEXIS 47042, 2007 WL 1813821 at *2 ("Under the federal office removal statute, suits against federal officers may be removed despite the nonfederal cast of the complaint.") The Court takes a similar view. Plaintiffs' second dis-

claimer effectively mirrors Defendants' federal contractor defense and so in no way prevents [*18] litigation of the applicability of that defense in state court, which is precisely what the federal officer removal statute seeks to avoid. To grant a plaintiff's motion for remand based on such a disclaimer would, therefore, render the federal officer removal statute completely ineffectual in the face of an "artfully constructed" complaint. Oberstar, No. CV 08-118, 2008 U.S. Dist. LEXIS 14023 at *8. The Court cannot allow Plaintiffs to evade federal officer removal in such a fashion.

Plaintiffs rely on Westbrook v. Asbestos Defendants, where the court, when faced with similar facts and evidence, found the plaintiffs' disclaimer to be determinative and remanded the case back to state court. 2001 U.S. Dist. LEXIS 11575, 2001 WL 902642 at *3 (N.D. Cal. July 31, 2001). However, Westbrook is distinguishable from the present case in that the plaintiffs in Westbrook disclaimed "any claims arising out of work done on United States Navy ships." 2001 U.S. Dist. LEXIS 11575, [WL] at *2. In other words, the plaintiffs in Westbrook specifically waived any causes of action stemming from asbestos exposure on naval vessels; instead premising their claims on injuries arising from work done on private ships. Id. As a result, unlike in the present case, the parties in Westbrook had no need [*19] to litigate any issue resembling the federal contractor defense in order to determine the applicability of the plaintiffs' disclaimer. Therefore, remand in that case did not undermine the purposes of § 1442(a)(1), as remand here would, and so was appropriate.

## III. Conclusion

Based on the foregoing reasons, Plaintiffs Robert and Christine Reaser's Motion for Remand is DENIED.

IT SO ORDERED.

DATED: June 23, 2008

/s/ Stephen V. Wilson

STEPHEN V. WILSON

UNITED STATES DISTRICT JUDGE

# EXHIBIT E

**MARKS, O'NEILL, O'BRIEN,**
**DOHERTY & KELLY, P.C.**
**BY:   KEVIN J. O'BRIEN, ESQUIRE**
**IDENTIFICATION NO: 38393**
**1617 JOHN F. KENNEDY BOULEVARD**
**SUITE 1010**
**PHILADELPHIA, PA  19103**
**(215) 564-6688**

**ATTORNEY FOR DEFENDANT,**
**VIAD CORP**

| | |
|---|---|
| RUTH F. HIMES, Executor for the Estate of CARL L. REESER, Deceased, and MARIAN L. REESER, his wife, | COURT OF COMMON PLEAS PHILADELPHIA COUNTY CIVIL DIVISION |
| Plaintiffs, | DECEMBER TERM, 2019 NO. 3279 |
| vs. | |
| VIAD CORP, Improperly Pleaded as Viad Corp., f/k/a The Dial Corp., as successor-in-interest to Griscom-Russell Company, et al., | ASBESTOS LITIGATION USDC No.: |
| Defendants. | |

## VIAD CORP'S NOTIFICATION OF REMOVAL

TO:   Jason Yampolsky, Esquire
      Maune Raichle Hartley French & Mudd, LLC
      230 S. Broad Street, Suite 1010
      Philadelphia, PA 19102

**PLEASE TAKE NOTICE** that Viad Corp, improperly pleaded as Viad Corp., f/k/a The

Dial Corp. as successor-in-interest to Griscom-Russell Company, filed a Notice of Removal on

January 29, 2020 with the United States District Court for the Eastern District of Pennsylvania to

remove the above-captioned action from the Court of Common Pleas of Philadelphia County,

Pennsylvania, to the United States District Court for the Eastern District of Pennsylvania. A copy

of the Notice of Removal is attached.

Respectfully submitted,

**MARKS, O'NEILL, O'BRIEN,**
**DOHERTY & KELLY, P.C.**

{PH507406.1}

*/s/ Kevin O'Brien*

Kevin J. O'Brien
Identification No. 38393
One Penn Center
1617 JFK Blvd., Suite 1010
Philadelphia, PA  19103
(215)  564-6688
Attorney for Defendant,
Viad Corp, Improperly Pleaded as
Viad Corp., f/k/a The Dial Corp. as
successor-in-interest to Griscom-Russell
Company

## CERTIFIATE OF SERVICE

The undersigned here certifies that a true and correct copy of the foregoing Notice of

Filing of Notice of Removal was served by U.S. First Class Mail on Plaintiff's counsel and

electronically served, upon all counsel of record on this 29th day of January, 2020.

**MARKS, O'NEILL, O'BRIEN,
DOHERTY & KELLY, P.C.**

_/s/ Kevin J. O'Brien_

Kevin J. O'Brien
Identification No. 38393
One Penn Center
1617 JFK Blvd., Suite 1010
Philadelphia, PA  19103
(215)  564-6688
Attorney for Defendant,
Viad Corp, Improperly Pleaded as
Viad Corp, f/k/a The Dial Corp. as
successor-in-interest to Griscom-Russell
Company

{PH507406.1}